Broome General Term, October, 1850.   *Shankland, Monson, H. Gray, and Mason,* Justices.

## Parsons *vs.* Pierce and others.

In all actions commenced since the enactment of the code, one defendant may be a witness for his co-defendants.

Accordingly *held* that in a joint action of assault and battery, against several persons, each defendant might call all of his co-defendants as witnesses in his behalf.

This was an action of assault and battery, tried at the Cortland circuit in March, 1850.   After the plaintiff had proved his case and rested, each of the defendants called all of his co-defendants as witnesses for himself.   The plaintiff objected to the competency of the witnesses, and the court sustained the objection, to which the defendants excepted; and now moved for a new trial.

*R. O. Reynolds,* for the defendants.

*Henry Stephens,* for the plaintiff.

Shankland, J.   This bill of exceptions presents for decision the question, whether the first clause of the 397th section of the code permits a defendant to testify in behalf of a co-defendant, in a joint action of assault and battery.   Prior to the code, there could be but one assessment of damages, in this action, against all the defendants, and for the same amount; and consequently a defendant was precluded from being a witness for his fellows, although he had suffered a default, and the others had pleaded to the action.   Each defendant was interested to reduce the damages as low as possible; and was therefore interested in the event.   (1 *Saund.* 207 *a, note* 2.   *Bohun* v. *Taylor,* 6 *Cowen,* 313.   *Thorp* v. *Barber and Spall,* 57 *E. C. L. Rep.* 675.) One defendant might, however, be acquitted, and others have verdicts pass against them in the same action.

But on a careful examination of the various provisions of the

code, and the sources whence the codifiers derived many of the changes, which they have introduced, I am reluctantly constrained to the adoption of the conclusion, that a co-defendant may be used as a witness for his co-defendant, in *all* actions, whether of *contract* or *tort*, as they were formerly denominated.

By section 69, the code abolishes the distinction between actions at law and in equity, and the forms thereof, and thereafter permits one form only, denominated a *civil remedy*. By §§ 111, 117, 118, 119 and 120, it defines who may be parties; and, in substance, adopts the rules which prevailed, on the subject of parties to suits, in the late court of chancery. By §§ 144 and 147, the right to demur, or to set up, by answer, a defect of parties, is retained; and by § 148 the defect is waived, unless taken advantage of in the manner specified. But by § 122 power is given to the court to add parties, if a complete determination can not be had, without prejudice to the rights of others. These are, in substance, the old chancery rules of practice on the subject of parties, and now made applicable to all actions.

It became necessary to the new system established by the code, to abolish the technical rule which prevailed in the old practice, that in actions on contract, the plaintiff must prevail against all the defendants, or none, except when one had a defence personal to himself, such as infancy, bankrupt certificate, &c. This the code has effectually accomplished by § 274, which in effect makes all the actions *several*, in respect of the judgment to be rendered. Here again we recognize the old chancery power of moulding the decree to suit the exigency of every case, and of every party to the suit, and of dismissing the bill as to some parties and retaining it as to others. In the note of the codifiers to § 230 of the original code (which corresponds to § 274 as amended) we are informed the object of this section " was to prevent a failure of justice, when there happened to be too many or too few parties brought into court," &c. There can not be a doubt, therefore, that it is no longer necessary or proper to nonsuit a plaintiff because he has made too many persons defendants in his action on contract, or too many plaintiffs in *any action*, whether on contract or for wrongs.

Parsons *v.* Pierce.

Having thus provided for the rendering of *several judgments* in the same action, for and against the several parties, according to their respective rights in accordance with the old chancery practice, the commissioners had prepared the way for the introduction of the new rules of evidence, contained in chapters six and seven, (§ 389 to 399,) which are now in harmony with other parts of the new system. Indeed § 469 abolishes the present rules and practice of the courts in civil actions, inconsistent with the provisions of the code; but where consistent they are retained, subject to the power of the court to relax, modify or alter the same. The words "*rules and practice*" in this section, have a more extended meaning than to confer the power of prescribing and revising mere written rules of practice. The section was intended to confer upon the courts the power to conform the practice of the courts in the conduct of suits, in particulars not specified in the code, to those provisions of the code which are specified, and so as to make one harmonious system in practice. That this is the meaning of § 469, is apparent from § 470, which gives express power to make general rules, &c. Section 469 removes the only difficulty (which was not removed by the sections previously cited) in the way of allowing the plaintiff to recover sums differing in amount, against different defendants, in the same action. For, it was not by virtue of any thing inherent in the contract itself, nor by reason of any statute law, that plaintiffs were formerly prohibited, in a joint action on contract, from recovering against one of several defendants; or that sums different in amount could not be recovered against different defendants; or that one of several joint plaintiffs could not alone recover, in the action. Those rules had their origin in the *practice* of the courts, and were introduced on account of their supposed convenience, and have from time to time been relaxed and modified, by decisions of the courts, as in *Hartness* v. *Thompson et al.* (5 *John.* 16,) and *Van Bramer* v. *Cooper,* (2 *Id.* 279; 3 *Caines,* 4;) and also by statutory enactments, as on the subjects of joint debtors, and parties to commercial paper. By the general language of § 469, the codifiers intended to *reach* and *embrace* all the numerous

changes in substance and form, in the practice of the courts, between the old and new systems, which the conciseness of the language used precluded them from enumerating, or which they might fail to foresee, but which the practice of the courts would reveal.

The source from whence the commissioners of the code derived §§ 397, 398 and 399, will tend to strengthen the conclusion that they intended to allow parties to be witnesses for their fellows, in all actions, and on all questions involved in the suit. They were derived from, and introduced the principles of evidence, somewhat modified, contained in 6 and 7 Vic. ch. 85, § 1, commonly called Lord Denman's act, for the improvement of the law of evidence.    The first section of that act makes all persons competent witnesses, in all courts, whether interested or not, (except parties to the suit, and others for whose immediate benefit the action is *prosecuted* or *defended*,) and to criminal as well as civil actions.    It then enacts that " in courts of equity any defendant to any cause pending in any such court, may be examined as a witness on the behalf of the plaintiff, or of any codefendant in any such cause, saving just exceptions; and that any interest which such defendant so to be examined may have in the matters, or any of the matters in question in the cause, shall not be deemed a just exception to the testimony of such defendant, but shall only be considered as affecting, or tending to affect the credit of such defendant as a witness."    The last clause of the Denman act is confined to parties in the court of chancery, and it enlarges the rule of admissibility which previously permitted only such parties to be examined as had no personal interest in the suit, or allowed them to be examined on questions as to which they had no interest.    The original code but partially adopted the provisions of the Denman act, by allowing interested *witnesses* to testify, (§§ 351, 352, *and com'rs note*,) and thus appropriated the principles of that act, so far as it applied to the courts of common law, and did not extend it to *parties* to the suit.    But in the amended code (§ 397) they introduced into our practice the last clause of the English act, which, as we have seen, is there *confined* to equity courts: but

is here extended to all courts and all actions. "A party may be examined on behalf of his co-plaintiff or a co-defendant, but the examination thus taken shall not be used in behalf of the party thus examined." This is the sense of the last clause of the Denman act, in more concise words, with the additional provision that a co-plaintiff may be examined in behalf of a co-plaintiff.

The codifiers having abolished all distinctions between actions and the forms thereof, could not confine the provisions of § 397 to *equity* suits, as in England; hence the necessity of extending the provisions to all actions. This section, being thus traced to 6 and 7 Vic. ch. 85, § 1, we are to look at the decisions of the English chancery courts, on the construction of their act.

In *Legh* v. *Williams*, (8 *Jur.* 29,) it was held that an order for a defendant to examine a co-defendant under 6 and 7 Vic., is to be drawn up in the form in use prior to the passing of that statute, *omitting* the allegation that the party to be examined *had no interest in the matters in the suit.*

In *Wood* v. *Rowecliff,* (6 *Hare,* 183, 11 *Jur.* 707,) it was held under that statute, that one defendant is a competent witness for another defendant; and that it was no just exception to his evidence that the title of the plaintiff to sustain the suit against both the defendants depended upon the same issue; that fact only tending to affect the credit of the witness; and that co-defendants having a common interest as against the plaintiff, may examine each other, in support of their common cause. But in the case of *Monday* v. *Guyer*, (1 *De Gex & Smale,* 182, 11 *Jur.* 861,) it was held by Vice Chancellor Knight Bruce, that where there are two defendants, who have exactly the same defence, the said statute does not render the evidence of one admissible in favor of the other. In a still later case, in the Irish Chancery Reports, the decision of Vice Chancellor Wigram, in *Wood* v. *Rowecliff,* is approved of, and the construction of the statute there adopted is confirmed.

The change produced in our practice by the adoption of this new rule of evidence is more violent here than in England; because it is to be applied in all actions, and in all courts; but I perceive

no insuperable obstacle to carrying it out in practice, if we can learn to *forget* the old common law doctrines, that in actions *ex contractu* the judgment must be for all the plaintiffs or for none, and against all the defendants or none; and that in actions *ex delicto*, judgments must be for all the plaintiffs or none; and that it must be for the same amount against all the defendants.

·Now, it is otherwise, I think, in all these respects, and judgment must be according to the rights of each of the parties, without reference to the case of the others. So, too, judgment may be for different sums, against different defendants. In short, the judgment must now be moulded to meet the rights of the parties, as was formerly the case with decrees in chancery. Indeed, it was in consequence of the rigidity of the common law rules on this subject, that parties were so often driven into the court of chancery, under the old system. (1 *Story's Equity*, §§ 28, 437, 439. 8 *Paige's Ch. Rep.* 548.)

I am therefore of opinion that in actions commenced since the code, one defendant may be a witness for his co-defendant, in all actions; and that a new trial must be granted in this case,

MONSON, J. By § 397 of the amended code of 1849, "a party may be examined on behalf of his co-plaintiff, or a co-defendant, but the examination thus taken shall not be used on behalf of the party examined." Had the codifiers intended to pass a law which would warrant the offer made on the part of the defendant in this case, I am tempted to ask what other language would they have been likely to use than that just cited.. By the latter part of the same section, if these defendants had even been joint contractors, or united in interest, and one of them had been called as a witness by the plaintiff, the other could have offered himself in his own behalf, and must have been received.

It is insisted on the part of the plaintiff, that this section was not intended to extend the rule formerly prevailing in the court of equity, which authorized a "party to examine a defendant

as a witness against a co-defendant or against the plaintiff, as to any matter in which such defendant was not interested. (*See Rule* 63 *of* 1847.) But § 397 does not discriminate between law and equity. And the preamble of the code says, that " whereas it is expedient that —— the distinction between legal and equitable remedies should no longer continue, and that an uniform course of proceeding in *all* cases should be established. Therefore, the people enact," &c. (*Code of* 1849, *Sess. Laws*, 614.) And the constitution declares that testimony in equity cases shall be taken in like manner as in cases at law. (*Art.* 6, § 10.) By § 344 of code of 1848, and § 390 of code of 1849, " A party to an action may be examined as a witness, at the instance of the adverse party, or of any one of several adverse parties," &c. Probably no one will contend that this applies only to cases in equity. In the third report of the commissioners in 1849, § 87, they say that the right to examine a party as a witness, given by those sections, is *extended*, so as to authorize the examination of a party on behalf of his co-plaintiff or a co-defendant, but the examination taken shall not be used on behalf of the party examined, except as against the examining party. Now if those sections applied to cases at law as well as in equity, by what rule of interpretation can it be said that the extension of them applies only to equity cases. The fact is the latter half of the section (397) was never applicable in equity, and the former part only as far as co-defendants were concerned, not co-plaintiffs. And we have seen without any extension the right according to the old equity rule, existed before § 397 was enacted. By §§ 118, 119 and 120, the right to join defendants in the same suit at law seems to be extended; and by § 274, " Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants, and it may determine the ultimate rights of the parties on each side, as between themselves. In an action against several defendants, the court may in its discretion render judgment against one or more of them, leaving the action to proceed against the others whenever a several judgment may be proper." Now whether these sections embrace provisions applicable to actions founded on prin-

Parsons *v.* Pierce.

ciples of law or of equity, a due regard to what Reeve, in his Domestic Relations, calls the symmetry of the law, or to what Gaius, the illustrious Roman Jurisconsult, who lived in the palmy days of the scienceof Roman law—the age of the Antonines—called the "elegantia juris"—would naturally lead us to expect that enactments would follow, corresponding to those expressed in the first clause of the 397th section.

The case of a suit upon a joint contract, against two defendants, where the verdict must be found against both defendants or neither, and where the testimony of one of the defendants must necessarily be in his own favor, it is not necessary now to decide. The question before us arises in an action of tort; and the defendants are severally liable, if at all; and they are interested rather against than in favor of each other, since their testimony can not be used for themselves, and can be used against the examining party. For if one testifies so as to acquit the other, he may be held solely liable for the damages and costs; and on the other hand, if he makes out that his co-defendant is as bad or worse than himself, he will have to share in the responsibility.

The policy of the commissioners is to throw open the door to the admission of evidence as far as is consistent with the technical prejudices of the age. Agreeably to their report in 1848, it was enacted that no person offered as a witness should be excluded by reason of his interest in the event of the action. To be sure this was not to apply to the party in the action, nor to him for whose immediate benefit the action was prosecuted or defended, nor to the assignor of a thing in action assigned for the purpose of making him a witness. What reason could be given for making these exceptions, especially the two last, distinguishing them from the general rule, it is difficult for me to imagine. Still the improvement was valuable; an advance was made in removing some of the absurdities of the old common law system of evidence, as where a witness was excluded if interested in the event ever so little, and admitted if interested in the question ever so much. Even in this partial improvement, we are constrained to acknowledge, not much

Parsons *v.* Pierce.

perhaps to the credit of our republican institutions, that we were five years behind monarchal England.

Under the old system, a joint trespasser who had suffered judgment by default, though inadmissible for the plaintiff, might be received in favor of his co-defendant. (2 *Campb. N. P. Rep.* 334.) Though it has been decided otherwise in this state. (6 *Cowen*, 313.) A party *ex necessitate rei*, was allowed to prove the loss or destruction of a paper, preliminary to the introduction of secondary evidence. (12 *Wend.* 173.) And a witness, though interested, could testify to a collateral point. (16 *John.* 195.) And a party was always allowed to be his own witness by affidavit on interlocutory questions. By the code, a party is allowed to swear to his complaint or answer in an action at law. Can there be less propriety in allowing him to testify as a witness, where he would be subject to cross-examination?

If parties were in all cases allowed to testify, agreeably to the report of our commissioners of the code complete, made in December, 1849, and agreeably to a report made in 1848, before the "Society for promoting the amendment of the law," in England ; a society composed of the most distinguished judges and lawyers of that country ; and according to the law as it now exists in Connecticut, in all actions, and where in most actions it always has existed, I am prepared to say that it would be more in accordance with the symmetry of the law and the *elegantia juris ;* would remove distinctions between cases where it would puzzle any acute lawyer to perceive a difference in principle, and would have a salutary effect in the administration of justice.

But the court sits here "*jus dare,*" not "*jus facere ;*" to administer and not to make law. (3 *John.* 47.) The language of the section under consideration is, "A party may be examined on behalf of his co-plaintiff or a co-defendant, but the examination thus taken shall not be used on behalf of the party examined." This would seem to be plain enough "to enable a person of common understanding to know what is intended." And it would hardly seem to be necessary to refer to 1 *Kent,*

462, and to 20 *Wend.* 561, to show that Chancellor Kent and Ch. J. Bronson have stated the rule to be—the correctness of which no one will be disposed to deny—that "statutes are to be read according to the natural and most obvious import of the language, without resorting to subtle and forced construc- tions for the purpose of either limiting or extending their operation."

After the best examination that I have been able to bestow upon this question, I have come to the conclusion that the wit- ness should have been admitted to testify. The motion for a new trial must therefore be granted, with costs to abide the event

H. GRAY, J. and MASON, J. concurred.

Judgment reversed, and new trial granted.

---

ERIE GENERAL TERM, April, 1851. *Mullett, Sill, and Mar- vin,* Justices.