The leading and most important question, in many of its aspects, now submitted for our consideration, involves the constitutionality of the act passed April 17th, 1854, by which the Legislature of this State undertook to erect a new county by the name of Schuyler.
I have carefully considered this question in all its aspects, and entertain no doubt that the act referred to is, in many respects, incompatible with the Constitution. In the opinion I am about to give I shall confine myself to the question of its conflict with a single provision of that instrument, and in order justly to interpret the provision to which I refer I will briefly allude to the state of things that existed long prior to and at the time of its adoption, and continues yet to exist, that we may see and understand more clearly the purport of its language. No local civil action could be brought elsewhere than in the county where it originated. All crimes committed within the several counties of this State, with a few specified exceptions made by statute, were not indictable and triable in any other county than the one in which they were wholly committed. Circuit Courts and Courts of Oyer and Terminer were required to be held annually in each county, the latter being the only court in the State having jurisdiction to try persons indicted for offences punishable with death or imprisonment in the State prison for life; jurors, *Page 60 
grand and petit, could only be summoned to serve in the county in which they resided. All this was to afford to any citizen charged with crime the right to be tried by a jury of his vicinage, and to those whose necessities required them to prosecute or defend, especially in actions of a local character, the opportunity of doing so in the county of their residence, and to have their controversies, so far as the facts were involved, settled by a jury of their own county; the expense of all of which, so far as it was chargeable to the county, was, with the other expenses of the county, audited by a board of supervisors elected by themselves.
With this state of things existing, the present Constitution was framed, and for the purpose of keeping each county independent of any other, so far as it related to their local affairs, and less dependent upon the representatives of other counties and districts for legislation, each county was given a Member of the Assembly, and the Legislature were authorized to confer upon the boards of supervisors of the several counties the power of local legislation, and were required to divide the State into eight judicial districts, of which the city and county of New York should be one, "the others to be bounded by county lines." (Const., art. 6, § 4.) It is upon the ground that by the act in question, the sixth and seventh judicial districts cease to be bounded by county lines, that I hold it to be in conflict with the Constitution and void. I have referred to the circumstances existing when the Constitution was adopted, and with which it has, in no respect, interfered, on account of a suggestion that the Legislature are not forbidden from making other boundaries than county lines for judicial districts, except when they establish them after an enumeration. This obviously is not so, and I did not understand the counsel for the defendant to put forth any such proposition. It is only because he referred to a case containing such a doctrine that I refer to it. Judicial districts are to be bounded by county lines, and when they cease to be so bounded, whether before or after an enumeration, they cease to have the boundaries which the Constitution has prescribed for them. This is *Page 61 
not only giving to that provision the fair import of its language, but in view of the state of things that existed at the time of its adoption, the great public inconvenience that would result from any other interpretation precludes the idea that judicial districts bounded otherwise than by county lines are bounded as the Constitution, either in letter or spirit, requires. The act in question, for many purposes, went into effect immediately after its passage; for all purposes except the election of members of the Legislature and Justices of the Supreme Court, and for the holding and jurisdiction of the Supreme Court, Circuit Court and Courts of Oyer and Terminer, on the 1st day of January, 1855; and for all purposes whatever, after the then next State census or enumeration. (Law of 1854, §§ 6, 26.) Assuming that, on the event of that enumeration, a state of things was sure to exist that would make the act valid had it not been passed until that time, raises the question whether the county organization provided for in the meantime, rendered the act obnoxious to the objection that by it judicial districts ceased to be bounded by county lines. This is not, as will be seen, the strongest aspect in which the question arises, as to the repugnance of this act to the provision of the Constitution to which I have referred; but if it depended upon this question alone, it could not, with any just regard for the Constitution, be upheld. I have shown the objects of requiring judicial districts to be bounded by county lines, and without repeating them, I have only to say that they apply with as much force to the state of things which this act authorized as to any county in the State. The territory embraced within its bounds at once ceased, every part of it, to be territory belonging to the adjoining counties, for any county or local purpose. The lines of no other county were within its bounds, and unless some more appropriate designation could be given to the territory comprising it, the Legislature were right in calling it a county. They could have called it nothing else. The Constitution has made no discrimination between counties of large or small advantages. It is enough if they are counties, and justly entitled to be called *Page 62 
so, to have them recognized as such by the Constitution, and kept whole and undivided by the lines of judicial districts.
A great mistake has, to a considerable extent, prevailed, in supposing that the validity of the act in question depended upon or had any connection with what the Legislature were bound to do at its first session after the enumeration which succeeded its passage, or at any other time. It seems to have been supposed that the Legislature was bound, at its first session after that enumeration, not only to apportion the Members of the Assembly, but to reorganize the judicial as well as the Senate districts. (De Camp v. Eveland, 19 Barb., 81-90), and this was thought to relieve the question I am now considering from any difficulty. That Legislature did not think so, but regarded the requirements of the Constitution, in respect to apportioning the Members of the Assembly and reorganizing the Senate districts, as directory, and left that duty to be performed by a subsequent Legislature; and so far as it relates to the reorganization of judicial districts the error is palpable. The Constitution has not commanded the Legislature which comes next after the return of any enumeration to reorganize the judicial districts. It has simply permitted it to be done at the next session after each enumeration. (Const., art. 6, § 16.)
If, therefore, it be conceded that the validity of this act depended upon an act which the Legislature, at its first session after the then next enumeration, were required to do, there, and from that point, its conflict with the Constitution may be plainly seen. That Legislature was not bound, by any requirement in the Constitution, to place this county entirely within a judicial district, so as to relieve the act erecting it from the objection of preventing judicial districts from being bounded by county lines. Whatever, therefore, may be said in relation to the right of the Legislature to erect a county when it cannot be done for all purposes, one thing is entirely clear, and that is, if it is made to depend upon any future event, it must be one as sure to occur as any event in time, and an event, too, which will, of itself, relieve the act of all *Page 63 
constitutional objections; but I do not, by any means, think that the event, upon the occurrence of which this county was to become a separate and distinct county for all purposes, was one that was not sure to occur. It did occur. It was the return of the enumeration of the inhabitants of this State, an event of itself that amounted to nothing, that could by possibility relieve the act from a single objection to its validity. It neither gave the county a Member of Assembly to which it would be entitled, nor placed it wholly within a judicial district. It may be said that, by fair intendment, this county was not to be one for all purposes until the Legislature had acted upon the enumeration. Such a position cannot be maintained; but grant that it can be, and what then? The Legislature are bound to reapportion the Members of the Assembly and reorganize the Senate districts (Const., art. 3, §§ 4, 5); but they are not bound to reorganize the judicial districts, and, for aught that could be shown when this act was passed, they never would reorganize them under the present Constitution. Aside from this, it is clear that the Legislature, by the act itself, intended the return of the enumeration as the point of time when the act should go into full effect for all purposes, for the reason that the event which would make it do so must have occurred and passed before a Member of Assembly could be apportioned to it. No territory, except a full and perfect county, is entitled to be separately represented in the Assembly. It is not the reapportionment that makes a county, but a county that is entitled to have a member apportioned to it.
During all the time that elapsed between the return of the enumeration referred to and April, 1857, if the act in question is valid, the inhabitants of this county were without a representative in the Assembly, and thus, to that extent, its electors were disfranchised. (Const., art. 2, § 1.)
This is not all. Its inhabitants were without civil remedies in local actions, and crimes of the highest grade might have been committed with impunity, there being no court having jurisdiction of the offences. Have these objections been removed? It is claimed that they have, and that, notwithstanding *Page 64 
the act was invalid when it was passed, the decision in De Camp
v. Eveland, in favor of its validity, and the acts of the Legislature, passed April 13, 1857, reapportioning the Members of Assembly, and reorganizing the Senate districts, bringing this county within a Senate district, and apportioning to it a Member of the Assembly, together with the recognition of their validity by the State officers and the public, in twice electing a Legislature under them, rendered it too late to question the validity of the act by which this county was erected. This view of the case was presented with great power and force of argument by the defendant's counsel, and, for a time, I was, much more than a majority of my brethren, inclined to hold that the time had passed for questioning its validity; but upon reflection and more mature deliberation, I am satisfied that this view of the case cannot be sustained. No evils have resulted from the acts last referred to that cannot be remedied without endangering the government, or the validity of the laws passed by the Legislatures organized under them. The question, then, so far as it depends upon legislation, comes to this; if a Legislature cannot, by a single act, erect a county for all purposes, with the lines of judicial districts passing through it, can they accomplish the same thing by two acts passed at different times? That they cannot does not involve a doubt. The apprehension that the legislative department of the government is to be broken up by thus holding, or that the acts passed by it since the last reapportionment of the Members of the Assembly and the reorganization of the Senate districts are not valid, is not well founded. When the framers of the Constitution provided that an apportionment and reorganization once made should remain unaltered until after the return of another enumeration, they had reference to an apportionment and reorganization in accordance with the Constitution, and none other; and unless such an apportionment has been made, the Legislature are unrestrained from making one that shall conform to the authority under which they undertook to make the one referred to. The fact that the members of the Legislature have been elected under a void *Page 65 
apportionment does not invalidate the laws passed by them. It is enough that its members came in under color of a legal election to render all their acts valid, so far as it regards the public.
We come now to the case of De Camp v. Eveland, which it is claimed ought to have a controlling influence in the decision of this case, not as authority, but because of public acquiescence in it. That action originated in the Steuben County Court. The object of it was to recover several penalties incurred for violations of the excise law. In one of the towns formerly belonging to the county of Steuben, which, by the act in question, was made a part of the county of Schuyler, the County Court held the act to be unconstitutional; and, upon appeal, a majority of the judges of the Supreme Court of the seventh district then composing the court, held otherwise, and the judgment was reversed. The unsuccessful party then appealed to this court, and before the cause was argued, and before the offence charged in the indictment in the case now before us was committed, this court held that County Courts had no jurisdiction in causes of that description. (Kundolf v. Thalheimer, 2Kern., 593.) Hence, it will be seen, that the judgment in that case was not only not acquiesced in, but that the court in which it was pronounced had no jurisdiction in that case. And if we are to presume that the Legislature knew anything about that case when they apportioned to this county a Member of the Assembly, we should presume that they knew it was a question in no respect settled by our courts, and that the validity of the act was yet questioned, and would be litigated.
We come next to a subsequent act, passed April 15th, 1857, annexing this county to the sixth judicial district. This act, like those that preceded it, is also repugnant to the Constitution, and for two reasons; the first of which is, that it annexed a county to that district that had no constitutional existence; and the second, that it was a reorganization of the sixth and seventh judicial districts, at a time when the Legislature were forbidden to reorganize the judicial districts of the State. The *Page 66 
Legislature were authorized to reorganize the judicial districts of the State at the first session after the return of each enumeration, and are forbidden from doing it at any other time. (Const., art. 6, § 16.) It was not done at that session, and it is not denied that annexing Schuyler county to the sixth judicial district was a reorganization of the sixth and seventh districts. But it is claimed that it was not a reorganization within the meaning of the Constitution. That the exercise of that power at one time upon all the districts of the State, and not of two of them, is what is prohibited. The framers of the Constitution had several objects in view in authorizing the organization and reorganization of judicial districts. One was to have them bounded by county lines; another, to make and keep them compact and as nearly equal in population as possible (Const., art. 6, § 4); another to diminish the number of districts, if necessary (art. 6, § 16). It cannot be said that a reorganization was not proper, if necessary, for either one or all of these purposes; or that, if it was made to accomplish either of them, it was not a reorganization within the meaning of the Constitution. It may well be, that one district may increase in population so much more rapidly than an adjoining district, that, in order to carry out the injunction of the Constitution, and keep the districts equal in population as near as may be, a reorganization of the two districts may become necessary, when a reorganization of the others is in no respect required. No one, I apprehend, will pretend that such a reorganization can be made except at the one time specified by the Constitution, or that, when it is done for any such purpose, it is not a reorganization within the meaning of that instrument. The power to reduce the number of districts, which of itself would necessarily require a reorganization of all the others, is a distinct power, which is not, in express terms, forbidden at any time, though the prohibition is necessarily implied. This act transfers a large territory, consisting of three towns, from the seventh to the sixth district. If this may be done, Hamilton county, containing less than half that population, may be transferred from the fourth to the fifth district, or any other county *Page 67 
in the State from one to another adjoining district; and, if it be not incompatible with the Constitution to reorganize two districts by a single act, the Legislature may, by separate acts in the same session, reorganize two at a time, until the judicial districts of the State are all reorganized (the New York district excepted). The Constitution has made no exceptions in its prohibition against reorganizing these districts; and, if this act is valid, it is in the power of the Legislature to nullify this prohibition by a reorganization of the districts, two at a time, at any one session, until the whole work is completed.
The Constitution is to be judged of by the fair import of the language used, without resorting to subtlety or forced construction to limit or extend its operation. (Waller v.Harris, 20 Wend., 561, 562.) If we find an exception in the Constitution, where none is made, for the purpose of upholding an act of the Legislature in clear conflict with its words, susceptible, by a fair and natural construction, of answering all public exigencies, and of being fairly carried out according to the language used, we make the statute, and not the Constitution, the paramount law.
I am unable to perceive what relevancy the annexation of "Boston Corner" to the town of Ancram, in Columbia county, has to this case. That is a small territory, containing about one hundred persons, ceded by the Commonwealth of Massachusetts to this State, and, by an act of our Legislature, annexed to the town of Ancram. (Laws of 1857, vol. 1, 776.) No one pretends that the cession of that territory to this State, or its annexation to the town of Ancram, deprives any citizen of any other portion of the State of any privilege theretofore belonging to him. I do not find that it has, by any specific act of legislation, been annexed to any judicial district; but concede it to be in the third judicial district, it arises from a necessity growing out of constitutional legislation, and in no respect conflicts with the prohibition against reorganizing judicial districts except at a given time. The prohibition does not, in terms, extend to increasing or diminishing a single district, but to districts, two or more. *Page 68 
I am, therefore, for the reasons stated, of opinion that the act erecting the county of Schuyler was repugnant to the Constitution and void.
SELDEN and ALLEN, Js., were also in favor of affirmance.
Judgment reversed.