JAMES BURKITT, RESPONDENT, v. WILLIAM HARPER AND GARRETT V. ELDERT, IMPLEADED WITH OTHERS, APPELLANTS.

*Mechanics' lien law for Kings and Queens counties — chap. 478 of 1862 — when person " permitted " by owner to build.*

In a lease, executed by the owners of certain lands in Queens county, it was agreed, as part of its consideration, " that the improvements built or to be built upon the premises are to revert to the parties of the first part at the expiration of the lease ;" and the lessees also agreed to keep such buildings insured for at least half their value, and in case of fire to devote the insurance money towards rebuilding them; the lessors had the privilege of terminating the lease and taking back the premises for $5,000, at any time within three years. The lessees erected buildings upon the premises, with the knowledge of and without objection by the lessors. This action was brought to foreclose a mechanic's lien, filed by the plaintiff.

*Held*, that the lessees were permitted by the owners of the land to build thereon, within the meaning of section 1 of chap. 478 of 1862, and that plaintiff was entitled to enforce his lien against the land.

APPEAL from a judgment entered upon the trial of this action, at Special Term, adjudging that the plaintiff has a lien, under the mechanics' lien act for Kings and Queens counties, chap. 478 of

1862, upon a lot of land owned by the appellants, and directing a sale thereof to satisfy the same.

On the 5th of March, 1877, Harper and Eldert made a lease in writing of premises at Rockaway, to James E. Davis, of New York, for the term of eight years from March 1st, 1877, at a rent of $500 for the first six years, and of $600 for the last two years. This lease contains the following clause: " And it is expressly agreed by and between the parties hereto, as part of the considertion of the said letting, that the improvements built or to be built upon the premises, are to revert to the parties of the first part at the expiration of this lease, to belong to them without further consideration therefor." Also, the following provisoin: " And it is further understood and agreed that the party of the second part, at the expiration of the term, is only to remove the household furniture, cooking utensils, crockery, stock in trade, and drinking tables, all else is to be included in the improvements, which are to belong to the parties of the first part." " And the party of the second part does hereby covenant and agree that he will insure against fire in some company, to be approved of by the parties of the first part, for at least one-half the amount or cost of the buildings erected and to be erected on the premises, and to maintain the same during said term, and in case of fire to devote the proceeds of such insurance to the re-erection or restoration of such improvements so burned and destroyed." Also, the following clause: " And it is further covenanted and agreed that, at any time within three years from date, the party of the second part may purchase the premises hereby demised for $5,000, and receive a conveyance in fee therefor, on which being done this lease and demise shall cease and be canceled." This lease was recorded in March, 1877, in Queens county.

On April 18th, following Davis made a contract with the plaintiff, James Burkitt, of New York, that Burkitt should erect and finish for Davis a new building at Rockaway Beach, on the aforesaid lot of ground. The building was completed according to contract, and the labor performed and materials furnished for erecting the building were of the value of $3,700, and the materials furnished for repairs were of the value of $185.

Eldert lived within half a mile of these premises, and Harper

had a place of business still nearer the premises; and each saw this building in process of erection, from time to time, and made no objection.

This action was brought in July to foreclose these liens, the plaintiff claiming that Harper and Eldert "permitted" Davis to erect said building, and repair said buildings, on their said lot of land, and that plaintiff, by virtue of his said contract with Davis, and by having furnished labor and materials for such erection and repairs, has a lien upon Davis' interest, and also upon Harper and Eldert's interest in said lot of land.

*Philip S. Crooke*, for the appellants.

*James McNamee*, for the respondent.

GILBERT, J. :

The statute relative to mechanics' liens in the counties of Kings and Queens, provides that any person who shall hereafter perform any labor or furnish any materials in building, altering or repairing any house or other improvement upon lands, etc., by virtue of any contract with the owner thereof, or his agent, *or any person permitted by the owner* of such lands to build, alter or improve as aforesaid, shall have a lien, etc. (Laws 1862, chap. 478, § 1.)

The defendant, Davis, holds the lands in question under a lease for eight years from March 5, 1877, granted by the defendants Harper and Eldert, who are owners of the fee of the lands. The lease contained the following stipulations: 1. That the improvements built, or to be built upon the lands, should revert to the lessors at the expiration of the lease. 2. That the lessee should insure for at least one-half the costs of the improvements aforesaid, and, in case of fire, should devote the proceeds of such insurance to the restoration of such improvements. 3. That the lessee might, at any time, within three years, purchase the demised premises for $5,000.

It is not disputed that the Legislature, by the statute cited, intended to authorize a lien upon the lands of the reversioner in a case like this, provided the work was performed, and the materials

were furnished with his permission, and such seems to be a proper construction of the statute. Words are to be taken in a natural and obvious sense, and not in a sense unnecessarily restricted or enlarged. (*Martin* v. *Hunter's Lessee*, 1 Wheat., 304; *Waller* v. *Harris*, 20 Wend., 561.) Lessees are not owners of the land, but they have only a chattel interest therein. (1 R. S., 722, § 5.) The reversion is the chief estate, and the reversioner is in law regarded as the owner of the land. (*Smith* v. *Ferris*, 6 Hun, 553.)

The lessees were under no legal obligation to make the improvements in question. They were made with the knowledge and approval of the lessors, and, by the terms of the lease, will belong to them absolutely at the termination thereof. The permission of the lessors to make the improvements was manifested, not only by the terms of the lease to which I have referred, but by their approval of the work while in progress, and by abstaining from making any objection thereto. It is true they might not have been able to prevent the work being done, but the disability arose from their own acts in making the lease, and they might have withheld their permission by a simple notice to the licnor.

We are of opinion, therefore, that the lessees were permitted by the lessors to make such improvements. (*Rollin* v. *Cross*, 45 N. Y., 770; *Nellis* v. *Bellinger*, 6 Hun, 560, and cases cited.) The cases of *Knapp* v. *Jackson* (45 N. Y., 207), and *Muldoon* v. *Pitt* (54 N. Y., 269), are not in point. The statute which governs those cases require that the work shall be done "in accordance with the direction of the owner." The court very properly held that the statute gave no lien against the owner, unless a contract with him, express or implied, had been made. Where one orders or directs work to be done on his land, the law will imply a contract on his part to pay for it, but no such implication can be drawn from his merely permitting the work to be done by a lessee. Under the statute which governs this case, however, no contract, express or implied, with the owner is necessary; but his land is bound, if he permits others to make improvements thereon. In this respect there is a marked difference between the statutes. The Legislature, by the statute applicable to this case, expressed their intention that, one who provides beforehand for taking the benefits produced by the property or labor of another in the form .  ...

of improvements upon his land, or one who assents to the making of such improvements upon his land, knowingly, and for the purpose of deriving the present or future benefit thereof, should have his land subjected to a lien for the value thereof. Cases may arise where a tenant makes repairs in fulfillment of his legal obligation to do so, or causes improvements to be made without either the assent or dissent of his landlord. In such cases the general authority conferred by the lease might not suffice to prove the permission required by the statute last referred to. There must be something in the lease, or some act done by the landlord *aliunde* the lease, from which an inference may be properly deduced, that the particular work for which a lien is claimed was done with his permission. If the work is done against his will, or without his consent, no lien on his interest is created. If the tenant obtains his permission to do the work, such lien may follow.

Upon the principle stated, we think enough was shown to bind the lands of the lessors in this case.

The judgment must therefore be affirmed, with costs.

BARNARD, P. J., concurred.

Present — BARNARD, P. J., GILBERT and DYKMAN, JJ.

Judgment affirmed, with costs.