Jasen, J.
(dissenting). The majority today holds that subdivision a of section 207-k of the General Municipal Law establishes a dual presumption that any disabling or fatal heart condition suffered by a New York City policeman or fireman is not only service connected, but is also the result of an accident, thus entitling the employee or his family to “accidental” rather than “ordinary” pension or death benefits for any such ailment. In my view, such an interpretation is contrary to the clear and unequivocal wording of the statute and was not intended by the Legislature. I, therefore, respectfully dissent.
In general, a New York City policeman or fireman is entitled to “accidental” as opposed to “ordinary” retirement or death benefits only if it can be shown that the condition causing the disability or death occurred in the line of duty and was the result of a specific accident. (Administrative Code of the City of New York, §§ B18-39.0, B18-43.0, B19-7.8, B19-7.84.) By enacting section 207-k (subd a) of the General Municipal Law, the so-called “heart bill”, the Legislature significantly lessened the burden of proof imposed upon New York City policemen and firemen as an antecedent to the collection of “accidental” benefits by relieving them of the requirement of proving that the condition causing their death or disability occurred in the “line of duty”. This result was obtained through the creation of a rebuttable statutory presumption that the ailment was “incurred in the performance and discharge of duty”. (General Municipal Law, § 207-k, subd a.)[1]
*474 Nowhere in the statute is any mention mad'e, directly or indirectly, of the further requirement that the disabling or fatal condition be the result of a specific accident. Indeed, it is indisputably clear that the statute does not provide for a presumption that the employee’s disability or death was accidental. Nonetheless, a majority of this court has decided today that the Legislature, by explicitly creating one narrow presumption, has in fact created two and has, for some unknown reason, simply not bothered to spell out the second one in the statute.
The majority bases its conclusion solely upon the legislative history and prior administrative interpretation of the statute. While such interpretive guideposts may appropriately be used to discern the Legislature’s intent where that body has ambiguously expressed its will, they may not be used as a license to ignore the plain meaning of a statute or as the justification to extend the terms of an otherwise clear legislative enactment. In the guise of construing the statute in light of its history to save it from “judicial repeal”, the court has today judicially amended the statute to extend its scope by adding a second presumption which finds no support whatever in the language of the statute. In doing so, the court has gone beyond the bounds of proper judicial interpretation. Instead of interpreting the words of the statute, the majority has decided to rewrite them. I decline the invitation to sit as a member of a committee on revision. (Matter of Barton v Lavine, 38 NY2d 785, 787.)
This court long ago decided that the best way to determine what the Legislature meant was to examine what it said. While a strictly literal reading of statutory language is rarely necessary and many extrinsic sources may properly *475 be consulted to assist the court in the interpretation of the words used by the Legislature, this court has consistently held that such sources are no substitute for the clear and unambiguous language of the statute. In McCluskey v Cromwell (11 NY 593, 601-602), for example, this court stated: “[I]n the construction, both of statutes and contracts, the intent of the framers and parties is to be sought, first of all, in the words and language employed, and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable, to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture, in order to restrict or extend the meaning. Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction, for the purpose of either limiting or extending their operation. Courts cannot correct supposed errors, omissions or defects in legislation, or vary by construction, the contracts of parties. The office of interpretation is to bring sense out of the words used, and not bring a sense into them. (Lieber’s Political and Legal Hermeneutics 87; 2 Ruth. Inst., ch. 7, § 2; Story on Const., § 392; Purdy v. People, 4 Hill 384; Smith’s Statutes, &c., § 478; Waller v. Harris, 20 Wend. 561.)” This rule of statutory construction has been consistently followed by this court. (See, e.g., Matter of Barton v Lavine, 38 NY2d 785, 787, supra; Matter of Roosevelt Raceway v Monaghan, 9 NY2d 293, 305; Meltzer v Koenigsberg, 302 NY 523, 525; Town of Putnam Val. v Slutzky, 283 NY 334, 343; Matter of Hering v Clement, 196 NY 218, 220-221; Settle v Van Evrea, 49 NY 280, 281-282; Newell v People ex rel. Phelps, 7 NY 9, 97 [Johnson, J., concurring].)
The majority attempts to avoid this settled rule of construction by noting that a literal reading of statutory terms is rarely “conclusive”, relying upon New York State Bankers Assn. v Albright (38 NY2d 430). Such reliance is, in my view, misplaced. As a general proposition, the majority is, of course, correct in its statement that stark *476 literalism is no substitute for reasoned interpretation, and the Bankers Assn. case clearly supports this notion. However, it is also clear that the court in Bankers Assn. did not intend to overrule the equally important rule of statutory construction that a clear statute needs no interpretation. Moreover, it must be remembered that what was rejected in Bankers Assn, was an attempt to artificially extend the terms of a statute beyond their intended meaning with an interpretation by a litigant which was at best only arguably supported by a literal reading of the statute. That case provides little authority for the judicial extension of a clear statute undertaken by the majority in the instant case.
Nor am I persuaded that the prior administrative interpretation of the statute compels the result reached by the majority. It is true that the Corporation Counsel of the City of New York had, between 1973 and 1979, consistently accepted the dual presumption upon which this court today places its imprimatur. However, we have only recently noted that where “the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight.” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459.) Here, no special competence is required to understand the language used by the Legislature and the administrative interpretation clearly ignores that language. Hence, the prior opinions of the Corporation Counsel and the prior practice of the trustees of the various pension funds should be accorded no weight.
Finally, if there were any doubt that the Legislature understood how to create a dual presumption when it intended to, we need look no further than the analogous “heart bill” statutes applying to other police officers and firemen in this State to dispel this doubt. In 1969, the Legislature enacted section 363-a of the Retirement and *477 Social Security Law (L 1969, ch 1103, §1) which explicitly contained a presumption that the heart ailments of covered firemen and policemen were the result of an accident. In 1973, that statute was amended to include a separate and distinct “line of duty” presumption much like the one embodied in subdivision a of section 207-k of the General Municipal Law. (L 1973, ch 1046, § 30.) In 1974, the Legislature deleted the “accidental injury” presumption in the Retirement and Social Security Law insofar as it applied to policemen while leaving intact the presumption for firemen. (L 1974, ch 967, § 1.) While the question of the effect of this deletion has not yet reached this court, it has been interpreted below as depriving such policemen of the benefit of this presumption. (Matter of Acciavatti v Levitt, 57 AD2d 131.) This legislative treatment of identical subject matter makes it clear that when the Legislature intends to afford a public servant the benefit of an “accidental injury” presumption, it knows full well how to enact one. Hence, where, as here, the Legislature fails to include such a presumption in a “heart bill”, it can only be concluded that the omission was intentional.
In sum, it seems to me that neither the legislative history of subdivision a of section 207-k of the General Municipal Law or its prior administrative interpretation compels the result reached by the majorty today. I would, therefore, modify the orders appealed from in Uniformed Firefighters Assn, v Beekman and Matter of De Milia v McGuire by reversing so much of such orders as affirm judgments declaring that subdivision a of section 207-k of the General Municipal Law contains a presumption of accidental casualty and further modify such orders by declaring that the statute provides only for a rebuttable presumption that the disabling or fatal heart ailment of a New York City policeman or fireman was incurred in the line of duty.
I note also that I would grant the relief requested by the city in Matter of City of New York v Mancuso. (See Matter of City of New York v De Milia, 73 AD2d 849.) However, in light of the decision of the majority on the primary issue in these cases, there is no need to detail the reasons for my view on this issue.
*478 Chief Judge Cooke and Judges Gabrielli, Fuchsberg and Meyer concur with Judge Wachtler; Judge Jasen dissents and votes to modify in a separate opinion in which Judge Jones concurs.
In each case: Order affirmed, with costs.

. The statute provides in full:
“§207-k. Disabilities of policemen and firemen in certain cities.
“a. Notwithstanding the provisions of any general, special or local law or administrative code to the contrary, but except for the purposes of sections two *474 hundred seven-a and two hundred seven-c of this chapter, the workmen’s compensation law and the labor law, any condition of impairment of health caused by diseases of the heart, resulting in total or partial disability or death to a paid member of the uniformed force of a paid police department or fire department, where such paid policemen or firemen are drawn from competitive civil service lists, who successfully passed a physical examination on entry into the service of such respective department, which examination failed to reveal any evidence of such condition, shall be presumptive evidence that it was incurred in the performance and discharge of duty, unless the contrary be proved by competent evidence.”