EDGAR W. CHAMBERLAIN, Respondent, v. THE WESTERN TRANSPORTATION COMPANY, Appellant.

The provision of the act of congress, passed March 3d, 1851, and entitled "an act to limit the liability of ship owners and for other purposes," that the owner shall not be liable for loss or damage "which may happen to any goods or merchandise whatsoever which shall be shipped, taken in or put on board any such ship or vessel, by reason or by means of any fire happening to or on board the said ship or vessel, unless such fire is caused by the design or neglect of such owner," extends to the ordinary baggage of passengers.

Although the statute changes the common law, it is not penal or in derogation of natural right so as to require a strict construction. It was enacted to remedy the rigor of the common law, and should be construed, if not liberally, at least fairly, to carry out the policy which it was enacted to promote; and the broad terms, "any goods or merchandise whatsoever," cannot be held to exclude baggage.

(Argued January 6th; decided May 1st, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the eighth district, ordering judgment upon a verdict in favor of the plaintiff directed at the trial, subject to the opinion of the General Term.

The action was brought by the respondent, as assignee of Hamilton Ward and Mary Ward, his wife, to recover from the appellant, as a common carrier, the value of certain personal baggage.

The facts as they appeared on the trial were as follows:

About the 9th day of August, 1864, Ward and his wife took passage, at Detroit, Michigan, on board of the propeller Racine, a vessel owned by the appellant and employed by it in its general business of carrying passengers and freight between Detroit and Buffalo, to be carried to Buffalo together with their baggage.

Early the following morning, and while the vessel was prosecuting such voyage, she was totally destroyed by fire, together with the baggage.

Ward and his wife, on going aboard of the vessel, paid the master the regular fare required for the carriage of themselves as passengers and their baggage (consisting of clothing and articles necessary and proper to be carried by them as travelers for comfort and convenience) from Detroit to Buffalo.

The fire took in the hold of the vessel, in which was stored a large quantity of highwines, and was not caused by any act or neglect of Ward or his wife, nor by lightning, nor by the public enemies, but by some cause unknown.

The court at the trial directed a verdict for the plaintiff, subject to the opinion of the General Term, which subsequently ordered judgment for the plaintiff, from which the appellant now appeals to this court. The case below is reported in 45 Barbour, 218.

*John Hubbell,* for the appellant, cited *Moore* v. *Am. Trans. Co.* (24 How. U. S., 38); *Walker* v. *Western Trans. Co.* (3 Wall. 153); *Law* v. *Marstetter* (2 Cranch, 10); 1 Pars. Mar. Law, 182; Appendix, 613; *U. S.* v. *Curtiss* (12 Peters, 72).

*Albert P. Laning,* for the respondent, cited *Merrill* v. *Grinnell* (30 N. Y., 594); *Orange Co. Bank* v. *Brown* (9 Wend., 85); *C. & R. R. Co.* v. *Burke* (13 Wend., 611);

*Hollister* v. *Nowlen* (19 Wend., 235); *Cole* v. *Goodwin* (id., 251); *Jones* v. *N. & N. Y. Trans. Co.* (40 Barb., 193); *Powell* v. *Myers* (26 Wend., 591); *Ellis* v. *Stuart* (10 J. R., 1); *Dorr* v. *N. J. Steam Nav. Co.* (1 Kern. 485); *Miller* v. *Steam Nav. Co.* (6 Seld., 431); *Glasco* v. *N. Y. C. R. R. Co.* (36 Barb., 557); *N. J. Steam Nav. Co.* v. *Mer. Bank of Boston* (6 How., 344); Angel on Carr., §§ 156–8; *Curtiss* v. *R. & S. R. R. Co.* (18 N. Y., 534); *Alden* v. *N. Y. C. R. R. Co.* (26 N. Y., 102).

EARL, C.   The defendant was a common carrier of passengers and goods between Detroit and Buffalo, and the measure of its responsibility, as such, is the only question to be determined in this case.

The common law, for reasons of public policy, held carriers, both by land and water, to the same rigid responsibility. It made them answerable for all loss and damage to the goods entrusted to them to carry, except such as were caused by the act of God, or the public enemies. Loss by fire, unless caused by lightning, was not within the exception, and hence, if a vessel was burned at sea and she and her cargo were involved in a common catastrophe, the carrier became liable to the freighter for the entire value of his goods. (*New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How., U. S., 344; *Miller* v. *Steam Navigation Co.*, 6 Seld., 431.)

This common law liability of carriers by water was at an early day limited, in England, by the statutes of 7 Geo. 2, C. 15; 26 Geo. 3, C. 86 and 53 Geo. 3, C. 159. The object of these statutes, as expressed in the preamble to one of them, was " to promote and increase the number of ships and vessels, and to prevent any discouragement to merchants and others from being interested and concerned therein." By these statutes the parliament exempted shipowners from liability in several cases of loss, and among them, loss by fire. These statutes were doubtless passed to place English shipowners upon the same footing with the shipowners of the continental nations of Europe, where the extreme rigor of the common

law had not been applied to carriers by water. *Moore* v. *American Transportation Company*, 24 How. U. S., 1; Holt's Law of Shipping, 401; Abbott on Shipping, 264.)

The common law rule remained in force in this country until an act was passed by congress, on the 3d day of March, 1851 (1 Brightly's Dig., 834), entitled "An act to limit the liability of shipowners and for other purposes," which embodies most of the provisions of the English statutes above referred to. This act is supposed to have been passed in consequence of the decision in 6 Howard, *supra*, holding the New Jersey Steam Navigation Company liable for goods lost by fire upon the Lexington, burned upon Long Island Sound. (*Walker* v. *The Transportation Co.*, 3 Wallace, 150.) The object of this statute, as stated by Justice CATON, in 24 Howard, *supra*, and as appears from the debates in congress at the time of its passage (23 Congressional Globe, 713–718) was to place our commercial marine on an equal footing with that of Great Britain, so that the increase of the number of ships and the navigation of them might be equally encouraged.

The first section of the act of congress referred to is as follows : " No owner or owners of any ship or vessel shall be subject or liable to answer for, or make good to any one or more person or persons, any loss or damage which may. happen to any goods or merchandise whatsoever, which shall be shipped, taken in or put on board any such ship or vessel, by reason or by means of any fire happening to or on board the said ship or vessel, unless such fire is caused by the design or neglect of such owner or owners."

The defendant claimed to be protected against any recovery in this action by virtue of this section, but the plaintiff claimed that the baggage in question was not " goods or merchandise" within the meaning of this section, and hence that the defendant was under the common law liability, and this was the view taken of the case by the General Term, and was the sole ground upon which the case was decided against the defendant.

This is not, in any sense, a penal statute, nor is it in any way derogatory to natural right, and hence I know of no rule of law that requires that it should be strictly construed. It is true that it changes the common law, but there can be no reason for applying the rule of strict construction to the vast body of statute laws which change the common law. The prior law, whether it be statute or common law, is to prevail, unless the subsequent statute, by a fair and proper construction, repeals or modifies it. This statute is rather a remedial statute. It was enacted to remedy the rigor of the common law, which it was deemed unwise, on grounds of public policy, to continue. It should, therefore, be construed, if not liberally, at least fairly, to carry out the policy which it was enacted to promote.

In construing this statute there are a few canons of construction which it is well to bear in mind. The popular or received import of words furnishes the general rule for the interpretation of statutes. (*Maillard* v. *Lawrence*, 16 How. U. S., 251.) Where general words are used the courts are not at liberty to insert limitations not called for by the sense or the objects or the mischiefs of the enactment. (*United States* v. *Coombs*, 12 Pet., 72.) Whenever any words are obscure or doubtful, the intention of the law-makers must be resorted to in order to find their meaning; and when ascertained, it must be followed with reason and discretion in the construction of the statute. (*James* v. *Patten*, 6 N. Y., 9.) Though the intention is to be collected from the words, yet, when the words are not explicit, it is to be gathered from the occasion and necessity of the law, the defect of the former law, and the designed remedy. (*Pillow* v. *Bushnell*, 5 Barb.; 156.) And sometimes the meaning of the legislature in a statute may be extended beyond the precise words used in the law, from the reason or motive upon which the legislature proceeded, from the end in view, or the purpose designed. (*United States* v. *Freeman*, 3 How. U. S., 556, 565.) The current of authority at the present day is in favor of reading statutes according to the most natural and obvious import of the language, without

resorting to subtle and forced constructions for the purpose of either limiting or extending their operations. (*Waller* v. *Harris*, 20 Wend., 555–561.)

We come, then, to the question whether the baggage in question is covered by the word "goods" in this section, and I entertain no doubt that it is. Webster defines "goods" to mean personal or moveable estate. In Jacobs' law dictionary, and also in Tomlin's, it seems to be held synonymous with chattels. In Bouvier's law dictionary it is said that this term will sometimes include money, valuable securities, and other mere personal effects, and that, used in a will, it will pass the whole personal estate, including even stocks in the funds. And such is the common understanding of the meaning of this word. It is generally understood to mean personal estate as distinguished from realty.

It sometimes has a restricted meaning, depending upon the circumstances under which it is used. I am not aware that in the business of commerce or among seafaring men this term has any signification different from that in common use. It is undoubtedly true, that in some cases of marine insurance, an insurance of "goods and merchandise" has been held to cover only such cargo as was laden on board the vessel for the purposes of commerce. But in all these cases this result was reached, not so much from the force of the terms used, as from the presumed intention of the parties, as gathered from the circumstances of the case. In all cases of insurance the courts seek diligently for the intention of the parties as to the extent of the risk assumed by the underwriters, and to do this it is necessary to go out of the written instrument to look at the course of trade and the technical use of terms, etc., more frequently than in most other contracts. An insurance upon the goods in a store would probably be held not to include the clothing and personal ornaments of the merchant, while an insurance upon the goods in a dwelling-house would probably be held to include all the personal effects of the owner. In *American Ins. Co.* v. *Griswold* (14 Wend., 399), a marine insurance upon "goods and merchandise" was held to include

specie obtained upon a sale of part of the cargo.   In *Duplanty* v. *Com. Ins. Co.* (Anthon's cases at N. P., 114), a curricle was held to come within the description of "goods, wares and merchandise."  In 1 Phillips on Ins., 173, it is said that "jewels, rings, etc., not designed for trade, but belonging to the persons of those on board of a vessel, have been said not to come under this description ; *but there appears to be no reason why they should not, if the policy was so intended.*"

What reasons have we, therefore, for supposing that Congress used this word in a restricted sense ?   It is not qualified in the statute.   To indicate that it was used in the broadest sense, we have the language " any goods whatsoever," thus making it clear that the term was used to include everything that could come within it.   After using such broad terms, which, according to ordinary usage, include baggage, if the law makers had intended to have excluded or excepted baggage, would they not have said so ?   Then again, can there be any reason for excluding from the operation of this law baggage ?   It seems to me that every reason for exempting the carrier from liability for the loss of a thousand dollars' worth of other property applies equally for exempting him from the loss of the same amount of baggage ; and hence, to carry out the policy of the law, the terms used should be so construed as to include baggage.   But if this term is to be used in a restricted sense, what is to be included and what excluded ?   Does it include only goods shipped as articles of commerce, or would the furniture of a family moving from the east to a home in the west be included ?   Is it confined to such goods as are shipped as part of the vessel's cargo, ordinarily accompanied with shipping bills ?   It seems to me that it is not thus confined.   The language used, " any goods whatsoever," " shipped, taken in or put on board," forbids it.

But it is claimed that there is something in the subsequent sections of the statute showing that the term was used in a restricted sense.   It is true that it is proper to look at the entire statute, to see what is meant by any part of it.   But it is said by Chief Justice Marshall, in *Faw* v. *Marstellar*

(2 Cranch, 10), that in searching for the construction of an act, positive and explicit provisions, comprehending in terms a whole class of cases, are not to be restrained by applying to those cases an implication drawn from subsequent words, unless that implication be very clear, necessary and irresistible. I have looked with great care at these subsequent sections, as much stress was laid upon them by the learned judge who wrote the opinion of the General Term.

The second section provides that the owner of a vessel shall not in any case be liable to any shipper of "platina, gold, gold dust, silver, bullion or other precious metals, coins, jewelry, bills of any bank or public body, diamonds or other precious stones," unless the shipper gives the owner or his agent notice in writing of their character and value, and has the same entered on the bill of lading, and that the owner shall not be liable for such " valuable goods " beyond the value thus given. Here the word "goods" is used to include all the valuable articles before named.

The third section provides that the liability of the owner of the vessel for the embezzlement, loss or destruction, by the master, passengers or crew, of any "property, goods or merchandise," shall in no case exceed the amount of the interest of such owner in the vessel and the freight; and in section 4, the same property is referred to as "goods, wares or merchandize, or any property whatever," and also under the general designation of " property ;" and in section 6, the same property is referred to as " goods, wares, merchandise or other property." It is conceded that the language used in these subsequent sections includes baggage ; but it is claimed in the opinion at the General Term, that, because the word "property" is used in these sections in connection with the other terms, it must be inferred that the law makers used the terms "goods or merchandise," in the first section, in a restricted sense, and as not including all that is included in the terms subsequently used. This is upon the theory that the law makers must have had a purpose in the use of every word which they have inserted in a statute, and that a statute must

be so construed as to give effect, if possible, to all the words used. However true and just this may be theoretically, as a rule of construction I apprehend that it will frequently be found in practice to lead to very absurd results. Under this rule of construction, why, in the first section, was the word "merchandise" used, as "goods," certainly, according to the construction adopted at the General Term, would include merchandise? In the third section, why are the words "any property, goods or merchandise" used, when all the things intended would clearly be covered by the words "any property?" And in the fourth and sixth sections, in speaking of precisely the same things, why are they called, in the one, "goods, wares, merchandise, or any property whatever," and in the other, "goods, wares, merchandise or other property?" What significance has the word "wares," and what is included in that that is not covered by the other terms used? It will thus be seen that language is used in this statute without much precision, and that there is no reason for believing that the law makers meant, by the language used in the subsequent sections, to include baggage, and not to include it in the words "any goods or merchandise whatsoever," used in the first section.

This conclusion is made more clear when we consider that, according to the construction given to this statute by the courts below, while the common law liability is changed by the first section as to all property but baggage, by the subsequent sections it is changed as to all property, including baggage. What reason can there be for this distinction? Why limit the common law liability of the ship owner, for the embezzlement and destruction of baggage by his own servants, and leave it in full force, in all its vigor, in case of the destruction of the baggage by fire, without his fault? Such an effect can be given to the statute, it seems to me, only by "a subtle and forced construction," disregarding the plain and ordinary meaning of the language used, and losing sight of the object and mischief and the public policy the law makers had in view in enacting the law.

This statute, in a case of loss of baggage by fire, has never come under discussion, so far as I have observed, in any reported case, although the statute has existed in England for nearly a century. The elementary writers upon carriers and shipping, while referring to these statutes and commenting upon them, do not allude to the distinction here contended for between baggage and other property. If such an important distinction existed, some of these able writers would probably have discovered and commented upon it; and it would not have escaped their notice and attention that the common law liability of ship owners as to property destroyed by fire remains in full force as to baggage, but is abrogated as to all other property.

As there was no proof that the fire was caused by the design or neglect of the owners of this vessel, I am therefore of the opinion that the defendant was not liable to the plaintiff; and the judgment of the General Term should be reversed, and judgment ordered for the defendant.

LEONARD, C. The language of the act of Congress is sufficiently comprehensive to include the baggage of a passenger. The intention is to relieve the owner of a ship or vessel from liability for loss of or damage to " any goods or merchandise whatsoever," " shipped, taken in or put on board," happening by means of fire, unless caused by design or neglect. Merchandise is usually spoken of as having been shipped, and baggage as having been put on board. The owner is not liable for baggage lost by the violence of the elements or the act of God, and the intention of Congress, as manifested by the act, is to extend the exemption and include loss by fire.

The judgment should be reversed.

All concur for reversal.

Judgment reversed and judgment ordered for the defendant, with costs.