THE PEOPLE OF THE STATE OF NEW YORK, PLAINTIFF, *v.* THE CITY OF BUFFALO; DEFENDANT.

*Weekly payment of wages under chapter* 388 *of* 1890 — *what classes of employees are embraced within this act.*

Under the provisions of chapter 388 of the Laws of 1890, entitled " An act to provide for the weekly payment of wages by corporations " the word " employee," when read in connection with the word " wages " used in that statute, is limited in its scope to laborers and workmen engaged in manual labor.

The compensation of a clerk in the mayor's office or a secretary or treasurer of a park commission, or a member of the fire department, or a school teacher, or a patrolman on the police force of a municipal corporation, is not in either case required by the said chapter 388 of the Laws of 1890, to be paid weekly.

A CASE submitted under section 1279 of the Code of Civil Procedure, involving the question as to the proper construction of the provisions of chapter 388 of the Laws of 1890, as applicable to the compensation of certain persons in the employment of the city of Buffalo and its departments.

*John T. McDonough,* for the plaintiff.

*Frank C. Laughlin,* for the defendant.

MACOMBER, J.:

The submission to this court, made in pursuance of the provisions of the Code of Civil Procedure, is for the purpose of obtaining a judicial construction and application of chapter 388 of the Laws of 1890, entitled "An act to provide for the weekly payment of wages by corporations." By the terms of the agreement of submission, if the plaintiff prevails, there should be a recovery of five penalties of ten dollars each against the defendant by reason of the failure and neglect of the city of Buffalo to pay weekly the compensation earned between September 1st and 23d, 1890, by John G. Goshleski, a clerk in the mayor's office; by George H. Selkirk, secretary and treasurer of the park commissioners; by John H. Brewster, a member of the fire department of the city of Buffalo; by George H. Stowitts, a school teacher, and by Michael Collins, a patrolman on the police force. So much of section 1. of the act in question as is material to this hearing is as follows:

"Every manufacturing, mining or quarrying, lumbering, mercantile, railroad, surface, street, electric and elevated railway (except steam surface railroads), steamboat, telegraph, telephone and municipal corporation, and every incorporated express company and water company shall pay weekly, each and every employee engaged in its business, the wages earned by such employee to within six days of the date of such payment."

The people claim that each and every one of the five persons above mentioned was and is an employee of the municipal corporation known as the City of Buffalo, whose salaries were wages earned, and that each of them was and is entitled to be paid his wages weekly, in pursuance of the provisions of said act. On the other hand, the city of Buffalo claims that each of said persons was not and is not an employe of said city within the meaning of the statute, that the salary of each of such persons was not wages within its meaning, and generally that the weekly payment law is not applicable to persons occupying such places.

The principle which is to control us in the interpretation or construction of this law is the intention of the legislature in passing the same, to be ascertained from the language of the act and also from the cause or necessity of making the statute. A strict and literal interpretation is not always to be adhered to where the case

is brought within the intention of the makers of the statute, although by a technical interpretation it is within its letter. It is the spirit and purpose of the statute which are to be regarded by us. The law should be so construed as to carry out the legislative intent, even though such construction be contrary to the literal meaning of some of the words used therein. (*People ex rel. Wood* v. *Lacombe*, 99 N. Y., 49.)

Not much need be said in regard to the word "wages" used in the title and body of the act; for if the statute had not used the word "employee," thus connecting the word "wages" with a person in many instances above the grade of a laborer, the people of this State, through its Factory Inspector, would probably not have sought a decision of the court upon these questions.

There is no doubt but the word "employee" is often used in a sense much in enlargement of the words "servant, workman or laborer." The only attempted legislative definition of the word which I have been able to find is contained in the report of the commissioners of the Code in submitting to the legislature an act entitled "The Civil Code" in the year 1865, but which never has been enacted into a statute. The commissioners there make the following definitions. Section 1004: "The contract of employment is a contract by which one, who is called the employer, engages another, who is called the employee, to do something for the benefit of the employer or of a third person." The commissioners, in a note, say that the scope of the whole chapter, beginning with the above-quoted provision, is not intended to be confined to servants, but includes factors, brokers, carriers, agents and all similar classes of persons.

Among lexicographers the definition given by Professor Whitney in the Century Dictionary of the word "employee" seems to me to be the most lucid and comprehensive; it is as follows: "One who works for an employer; a person working for salary or wages; applied to any one so working, but usually only to clerks, workmen, laborers, etc., and but rarely to the higher officers of a corporation or government or to domestic servants, as the employees of a railroad company."

That the word may have different meanings in different connections admits of no doubt. The principle enunciated by Horne Tooke in his Diversions of Purley, that a word has "one meaning

and one only," has no application to cases arising under statutes where construction or interpretation is required, except, perhaps, in scientific matters. Worcester, in the preface to his dictionary, says: "Though there may be found in Johnson's Dictionary many instances in which a distinction is made where there is little or no difference, yet the principle stated by Horne Tooke, that 'a word has one meaning and one only' cannot be admitted without numerous exceptions. Take, for example, some very common words, * * * the nouns law, letter, line, post; though the different senses in which these words are used may be, in some measure, in accordance with one original meaning of each, yet a single definition of each of the words would afford but very inadequate explanation. The original or etymological meaning of many words has become obsolete, and they have assumed a new or more modern meaning; many which retain their etymological meaning have other meanings annexed to them; many have both a literal and metaphorical meaning, and many both a common and technical meaning, all which need explanation."

The primary general sense of a word often ramifies into different senses, as Webster illustrates in the preface to his dictionary. He says, in substance, that by attention to the different uses and applications of the word, we become able, in most cases, to arrive at a satisfactory explanation of the manner in which the same word comes to be used with different significations. Professor Whitney says that, "both historically and with regard to present usage, it is impossible to draw a hard and fast line between these two sides of the language, either with respect to words or to their individual senses."

It may be broadly stated, therefore, that the word "employee," as used in the body of this statute, standing by itself, without words of limitation, is sufficient to include, not only persons engaged in manual labor, such as servants and laborers, but also such as may be employed otherwise. As was well held in the case of *Gurney* v. *Atlantic and Great Western Railway Company* (58 N. Y., 358), where, under an order and judgment of this court requiring the receiver to pay the laborers and employees of the company for labor and services actually done in connection with that company's railway, the compensation of Jeremiah S. Black, a lawyer, was held to

be payable by the assignee.   In that case Chief Judge CHURCH says: "It is quite as rational to believe that the intent was to include as to exclude the debt of the claimant.   Debts for materials and supplies were protected, and why may we not suppose that the claimants' demand was regarded to be as just and equitable as those, especially under the circumstances referred to?   The mortgage creditors received what they regarded a great benefit by making these concessions in the immediate appointment of the receiver, and the order should be liberally construed in favor of the creditors who are presumed to have assented to them and relied upon them for the payment of their debts."

Judge ALLEN in the same case says: "In the absence of any intent apparent on the face of the order to discriminate between different classes of 'employees' or different kinds ' of service,' the court cannot confine it to a single class or to a particular service.   The term ' employee ' is the correlative of ' employer,' and neither term has, either technically or in general use, a restricted meaning by which any particular employment or service is indicated.   The terms are as applicable to attorney and client, physician and patient, as to master and servant, a farmer and day laborer or a master mechanic and his workman."

But conceding so much to the extent of the meaning of the word " employee " it brings us only to the real question in issue.   That word must be read in connection with the word " wages " contained in the body as well as in the title to the act.   The word " wages " here used limits the meaning of the word " employee."   In the case already cited from the Court of Appeals no one, while conceding the correctness of the allowances to Mr. Black, would say that such allowances were wages.   The statute, therefore, contains within itself a limitation upon the meaning of the word " employee."   The case, consequently, as presented to us, is not whether the wages of an employee, but whether the salary of an employee shall be paid weekly or not.

But whatever meaning may be lexically imputed to the word employe, and whatever differences of meaning may arise when the word is used in different relations and connections, the safe mode of interpreting the word, as used in this statute, is to take into account the cause for the passage of the act, so far as it may be ascertained, and the evil sought by the act to be remedied.

This statute belongs to a large class of legislation designed for the promotion of the welfare of laborers and workmen, and may be classed with the act of parliament (38 and 39 Vic., chap. 90), entitled "Employers and workmen act," and other like statutes, and the acts of our own legislature for the limitation upon the employment of children of tender age, the limitation of the hours of labor, the protection of laborers under the acts for the inspection of factories, and acts like chapter 380 of the Laws of 1889, "To regulate the rate of wages on all public works in this State and to define what laborers shall be employed thereon." In the construction of an act passed for such purpose, we are not to adopt the rule of a strict construction as is done in the case of penal statutes and laws in derogation of the common law; although it is apparent that in one aspect of this statute it does interfere with the right of the employer to make a bargain with his employee in respect to the time of payment for his services. Nor should the statute be loosely, which is generally called liberally, construed; it should receive that interpretation which the court gave to the act involved in the case of *Chamberlain* v. *Western Transporation Company* (44 N. Y., 305), that is to say, fairly to carry out the policy which the statute was enacted to promote. If the words used are not explicit, their meaning must be gathered from the occasion and necessity of the law. In so construing the statute, the reason or motive upon which the legislature proceeded and the design sought to be accomplished must be held in mind. The statute should be construed in accordance with the nature and obvious import of the language there used, and not by resort to subtle and forced construction for the purpose either of limiting or extending its operation. (*Chamberlain* v. *Western Transportation Company*, *supra*; and *Waller* v. *Harris*, 20 Wend., 555–561.)

As was said by Judge JEWETT in *Tonnele* v. *Hall* (4 N. Y., 144): "Whenever the intention can be discovered it ought to be followed with reason and discretion in its construction, although such construction may seem contrary to its letter."

Notwithstanding the comprehensive meaning which has been above accorded to the word employee, for the purposes of the construction of this statute, yet that meaning may be qualified and restricted by reference to other parts of the act and the circumstances and facts

existing at the time and to which they relate. As Judge ALLEN says in the case of *Smith* v. *People* (47 N. Y., 337): "A literal interpretation of words in most common use, and having a well defined meaning as ordinarily used, would not unfrequently defeat rather than accomplish the intent of the party using them. If, in reading a statute in connection with other statutes passed at or about the same time, a doubt exists as to the force and effect the legislature intended to give to particular terms, that is, as to the meaning which it was intended they should bear and have in the connection in which they are used, it is also competent to refer to the circumstances under which and the purposes for which a statute is passed to ascertain the intent of the legislature. The ground and cause of the making of .a statute explains the intent."

Under these rules of construction and interpretation it is obvious that this act was intended by the legislature to take its place among others for the protection of laborers and workingmen. There is no special reason observable, either from the act itself or from the preceding legislation leading up to it, why the license clerk in the mayor's department in the city of Buffalo, or the secretary and treasurer of the park commissioners, or a public school teacher, or a fireman or a patrolman of the city, should be paid otherwise than in accordance with the terms of his agreement with his respective employers. Not one of those persons represents a class asking for legislation in its behalf. It would, therefore, be extending the statute beyond what appears to us to be the obvious meaning of the legislature in passing it to apply it so as to cover the cases of those persons.

Very little, if any, aid may be afforded in the construction of this statute, in order to show its meaning and application, by reference to other statutes pertaining to laborers, except others of its own class as stated above. There is, however, a series of cases having a bearing upon the subject-matter involved, arising under chapter 40 of the Laws of 1848, making stockholders of corporations liable to "laborers, servants and apprentices" of the corporation and holding that such law cannot be extended by the courts to clerks and contractors and other persons. Reference may be made to *Krauser* v *Ruckel* (17 Hun, 463); *Coffin* v. *Reynolds* (37 N. Y., 640); *Hill* v. *Spencer* (61 id., 274) and *Wakefield* v. *Fargo* (90 id.,

213) for discussions of the principle that an act manifestly designed for the protection of servants, laborers and apprentices cannot be properly extended by construction to other persons, although the word "servant" or "laborer" detached from the connection in which it is used in the statute and used metaphorically, is broad enough to include any person who engages his services to another for compensation.

It follows, therefore, that judgment must be ordered for the defendant upon the submission.

DWIGHT, P. J., and CORLETT, J., concurred.

Judgment ordered for defendant on the submission, with costs.

NOTE.— The rest of the cases of this term which are to be reported, with the list of decisions in those cases decided and not reported  will be found in the next volume (58) of Hun.— [REP.