No. 8890.

WILSON *v*. CITY AND COUNTY OF DENVER.

1. WORDS AND PHRASES—*Wages,* in common usage imports the compensation of laborers and domestic servants only.
A municipal ordinance prescribed the fee to be charged by an employment agency, as a certain per cent of "one month's wages and board." *Held* not to be applied to those seeking technical or clerical positions.
2. POLICE POWER—*Limitation of.* The right to follow a lawful calling is a property right, and cannot be abridged by any exercise of the police power, unless (1) the interests of the public generally require such interference, and (2) that the regulations proposed are reasonably necessary, and not unduly oppressive upon the individual.

*Error to Denver County Court, Hon. Ira C. Rothgerber, Judge.*

*Department One.*

Mr. WILLIAM W. GARWOOD, Mr. OMAR E. GARWOOD, Mr. JACOB V. SCHAETZEL, Mr. GEORGE O. MARRS, Mr. JOHN HIPP, for plaintiff in error.

Mr. JAMES A. MARSH, Mr. GEO. Q. RICHMOND, Mr. LAWRENCE LEWIS, Mr. NORTON MONTGOMERY, for defendant in error.

Opinion by Mr. Justice Teller.

PLAINTIFF in error was convicted in the Municipal Court of violating an ordinance of the City and County of Denver, which provides that an employment agent shall not charge a fee in excess of five per cent of the first month's wages and board for procuring employment for a male person. On appeal to the County Court, he was tried upon the following stipulation of facts:

"The defendant, O. C. Wilson, is manager of the Interstate Business Exchange Corporation, an employment agency licensed under the ordinance hereinafter quoted; although the license fee has been paid under protest. This

agency operates what is known as the Interstate Employ-
ment System, maintaining offices in the Kittredge Building
in Denver, where its business has been conducted for a
period of ten years last past.   It lists applicants, investi-
gates their recommendations, experience and qualifications,
and recommends applicants for vacancies.   No charge is
made for the service rendered the employer.   The applicant
is charged a $2.00 fee when he makes a first application
with the corporation for employment.   This fee is for the
purpose of investigating the applicant's record, and perma-
nently filing the same to be used in his behalf, and also
the classification of his qualifications, so that he can be
notified at any time there is a position open which the cor-
poration believes he will be interested in and qualified to
fill, provided the fee of $2.00 is not withdrawn. · This fee
is refunded if a position is not secured within thirty days,
provided claim is made in writing for its return before the
lapse of that time.

Upon the applicant's acceptance of a permanent position
secured either directly or indirectly through the efforts of
the corporation, the applicant agrees to pay as a commis-
sion an amount equal to one-fourth of his first month's
salary, in a position paying less than $1,000.00 per annum;
and an amount equal to one-third of his first month's salary
in a position paying $1,000.00 or over per annum.

On the third day of August, 1914, one J. H. Holmes made
application to the corporation for a position as mine clerk,
and signed the regular application, a copy of which is hereto
attached.   His duties were office and clerical, and he was
charged no registration fee for this application, having
paid the registration fee at the time of securing previous
employment.   The corporation secured him a position as
mine clerk at $90 per month, which he accepted.

He was charged 33⅓ per cent of the first month's salary
paid him in the position which the corporation secured for
him.   This amounted to $30.00, and in payment he executed
to the Interstate Business Exchange Corporation his prom-

issory note for $30.00, which note was subsequently paid during the period of his employment.

It is claimed by the City and County of Denver that the taking of this note and the collection of the same constituted a violation of section 833 of the ordinance rendering Wilson liable to fine."

This statement was supplemented by testimony of plaintiff in error, from which it appears that his organization advertises largely over a wide territory, both for applicants for positions, and for positions for applicants; that applicants are solicited from commercial colleges and engineering schools; that each applicant's record is investigated, and the result thereof, if satisfactory, kept on file; that a great part of the business consists in finding places for men of special and technical education; that it does not find employment for artisans, laborers, domestic servants and such; and that only individual positions are dealt with.

It appears, further, that witness had been carrying on said business in Denver for ten years, and that the organization has regular customers who secure through it, from time to time, persons for executive, technical and clerical positions.

Plaintiff in error was convicted in the County Court, and brings the cause here on error.

Sec. 831. "It shall be the duty of all persons who may obtain such license to keep the same publicly exposed to view in a conspicuous place in their office or place of business, together with a printed schedule of the fees to be charged for service, which shall be as follows, to-wit: For males, five per cent, and no more, on one month's wages and board; and for females, three per cent, and no more, on one month's wages and board; and no other so-called bonus or fee shall be exacted from said applicant. Every person paying the required fee shall receive a receipt for the same, which receipt shall state in plain terms the agreement between the intelligence or employment agent or broker and the person paying such fee, and if the terms

of said agreement are not fulfilled, then said fee shall be returned to the person who paid the same."

It is the contention of plaintiff in error that the ordinance, properly interpreted, does not apply to his business. In support of this position he cites the fact that the fee to be charged by licensed employment agencies is a fixed percentage on a month's "wages and board," terms which are not ordinarily used in connection with compensation for technical, executive or clerical services. The defendant in error replies by citing numerous cases in which the term "wages" is held to include salary, and all kinds of compensation for services rendered for a stated period. The most of these cases, however, involve the construction of statutes under which a party claimed compensation for services rendered, which the cases held were covered by the word "wages," giving it a broad meaning so as to protect rights which were apparently within the purview of the statutes under consideration. Some of the cases involved the bankruptcy act, which makes a man earning not more than $1,500 per year a "wage earner."

It can hardly be doubted that in common usage the term "wages" is applied to the compensation of laborers, artisans and domestic servants only. In Webster's New International Dictionary wages is defined as "pay given for labor, usually manual or mechanical, at short stated intervals, as distinguished from salary or fees." In *First Nat. Bank v. Barnum*, 160 Fed. 245, it is said that:

"Wages, as distinguished from salary, are commonly understood to apply to the compensation for manual labor, skilled or unskilled, paid at stated times, and measured by the day, week, month or season. * * * Salary, on the other hand, has reference to a superior grade of services. * * * By contrast, therefore, wages indicate inconsiderable pay for a lower and less responsible character of employment."

To support this statement cases from fifteen states are cited. In *Matter of Stryker*, 158 N. Y. 526, 53 N. E. 525,

70 Am. St. 489, it is said that "the word (wages) is applied in common parlance specifically to the payment made for manual labor, or other labor of menial or mechanical kind, as distinguished from salary and from fee, which denote compensation paid to professional men."

In *People v. City of Buffalo*, 57 Hun. 577, 11 N. Y. Supp. 314, the court held that a law giving every employe of a city the right to weekly payment of his wages did not apply to a clerk in the mayor's office. It was pointed out that, though the term "employe" was very broad, it was to be interpreted in connection with the term "wages"; and, since only those who earned wages were to be paid weekly, the statute was intended for the benefit only of laborers and workmen. The court adds that clerks, teachers and the like are not within the class needing the protection which the law was framed to give.

So, here, it may properly be said that the persons with whom plaintiff in error deals are not in need of the protection which this ordinance was intended to give.

It is true, as counsel for the city state, that many miners, mechanics and laborers are highly intelligent, and need no protection, but that does not change the fact that many members of the class to which they belong—for a time—do need protection. It is for the benefit of those less intelligent persons that the ordinance was adopted.

When we consider the use of the term "board" in connection with "wages" in that part of the ordinance which prescribes the fees to be charged, and the only part which mentions the compensation, it is clear that it was not intended to apply to persons seeking technical or clerical positions. These terms must be held to limit the application of the general language of the ordinance; and we come to this conclusion the more readily because, as stated by the New York court above mentioned, men of the class just mentioned do not need the protection in question; and, that being so, to include them in this limitation of the right to contract freely would be an unnecessary and, therefore, an

unauthorized exercise of the police power. *Philips v. Denver*, 19 Colo. 179, 34 Pac. 902, 41 Am. St. 240.

In this connection it may be noted that the portion of section 831 of the ordinance which prescribes the fees to be charged is identical with section 1 of the Act of 1893 (Sec. 2481, R. S. 1908), which in terms provides that the law shall not apply to persons other than "a day laborer, mechanic, artisan or household or domestic servant."

The right to carry on a legitimate business is a property right, and it can not be taken away or abridged by an exercise of the police power, unless it appears "first that the interests of the public generally, as distinguished from those of a particular class, require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals." *Lawton v. Steele*, 152 U. S. 133, 38 L. Ed. 388, 14 Sup. Ct. 490.

This ordinance does not meet either of said requirements.

For the reasons above stated we are of the opinion that the judgment should be reversed, and it is so ordered.

Judgment reversed.

Chief Justice Hill and Mr. Justice White concur.