OPINION OF THE COURT
C. Stephen Hackeling, J.
The court conducted a trial of the “dangerous dog” petition filed in the above-captioned action and rendered an oral decision concerning same on May 14, 2008. At that time, the court: declared the respondents’ Chesapeake Bay retriever Nellie to be a dangerous dog as defined under Agriculture and Markets Law § 121 (4); determined that Nellie inflicted serious injury upon the petitioner’s daughter; imposed a $1,500 civil penalty upon the respondents pursuant to section 121 (7); determined that the respondents are strictly liable to the petitioner for his daughter’s unreimbursed medical expenses pursuant to section 121 (10); and deferred the decision as to the amount of said judgment. The court also deferred consideration of the euthanasia/restriction provisions of section 121 (4) and (6) as it is undisputed that the subject dog has been sold and transported out of New York State. Counsel was asked to settle a judgment on the matter consistent with the court’s oral decision which resulted in two competing proposed judgments which require the court to clarify and further explain its findings and determinations. Specifically, the parties contest the appropriateness of this court making a finding of “negligence” and “strict liability” and the entry of judgment consistent with same.
Issues Presented
1. What constitutes “negligence” as a predicate for imposition of a section 121 (7) civil penalty?
2. What definitional standard did the New York State legislature intend when it determined in section 121 (10) that *653 the owner of a dangerous dog is “strictly liable” for medical costs resulting from injury caused by a dangerous dog?
3. Does section 121 (10) legislatively grant the District Court the jurisdictional authority to enter judgment for all strict liability medical costs caused by a dangerous dog?
Discussion
Section 121 of the Agriculture and Markets Law has undergone a series of amendments since 2004 which seemingly incorporate elements of the New York common law into the remedy provisions of its “dangerous dog” statute. Resolution of the contested legal issues requires the court to analyze the interplay between the statutory and common-law schemes of redress for dog bite injuries.
The relevant portions of Agriculture and Markets Law § 121 provide:
“3. Upon a finding that a dog is dangerous, the judge or justice may order humane euthanasia or permanent confinement of the dog if one of the following aggravating circumstances is established at the judicial hearing held pursuant to subdivision two of this section:
“(a) the dog, without justification, attacked a person causing serious physical injury or death; or
“(b) the dog has a known vicious propensity as evidence by a previous unjustified attack on a person, which caused serious physical injury or death; or
“(c) the dog, without justification, caused serious physical injury or death to a companion animal, farm animal or domestic animal, and has, in the past two years, caused unjustified physical injury or death to a companion or farm animal as evidenced by a ‘dangerous dog’ finding pursuant to the provisions of this section . . .
“7. The owner of a dog who, through any act or omission, negligently permits his or her dog to bite a person causing serious physical injury shall be subject to a civil penalty not to exceed one thousand five hundred dollars in addition to any other applicable penalties. Any such penalty may be reduced by any amount which is paid as restitution by the owner of the dog to the person or persons suffering serious physical injury as compensation for unreimbursed medical expenses, lost earnings and other *654 damages resulting from such injury . . .
“10. The owner or lawful custodian of a dangerous dog shall, except in the circumstances enumerated in subdivisions four and eleven of this section, be strictly liable for medical costs resulting from injury caused by such dog to a person, companion animal, farm animal or domestic animal . . .
“12. Nothing contained in this section shall limit or abrogate any claim or cause of action any person who is injured by a dog with a vicious disposition or a vicious propensity may have under common law or by statute. The provisions of this section shall be in addition to such common law and statutory remedies.” (Emphasis added.)
While the New York common law concerning dangerous animals has been definitively established by the Court of Appeals, there exists a paucity of precedent codifying section 121 of the Agriculture and Markets Law entitled “Dangerous dogs.” (See Bard v Jahnke, 6 NY3d 592 [2006] [concerning dangerous animals in general]; Collier v Zambito, 1 NY3d 444 [2004] [concerning dogs].) Prior to the Bard decision, it was generally understood[1] that the common law recognized two separate causes of action sounding in either a traditional “negligence” or a “vicious propensity” theory. However, the Bard Court determined that owners of domestic animals (such as dogs) are not now, nor ever have been, subject to “negligence liability.”
The dog injury issues presented arise out of a statute which provides for an expedited, special proceeding petition. (Agriculture and Markets Law § 121.) Statutes arising after the creation of the common law are held to abrogate it only to the extent of the “clear import of the language used” and only to the extent the “statute absolutely requires” (McKinney’s Cons Laws of NY, Book 1, Statutes § 301 [b]; see also Bertles v Nunan, 92 NY 152 [1883]).The statute’s derogation of the common law must be strictly construed. (Dollar Dry Dock Bank v Piping Rock Bldrs., 181 AD2d 709 [2d Dept 1992].) In order for a statute to change the common law, the legislative intent behind the statute must clearly have the purpose of doing so. (See Dean v Metropolitan El. Ry. Co., 119 NY 540 [1890]; Bose v United Empl. Agencies, Inc., 200 Misc 176 [Mun Ct, Brooklyn 1951].)
Recent amendments to the statute have sought to introduce the concepts of “negligence,” “strict liability” and “civil penal *655 ties” into the legislative scheme. In the Bill Jacket for these amendments the “purpose” of the bill is stated to be to “improve control over dangerous dogs through owner accountability and increased judicial leeway in determining the level of dangerousness in a dog and the proper treatment of the situation.” (Assembly Mem in Support, Bill Jacket, L 2004, ch 392, at 3 [emphasis added].) As subdivision (12) of the statute expressly preserves the common law, logic requires a finding that this statute provides a supplemental independent cause of action and remedy, as it would otherwise be unnecessary.
Negligence
The parties correctly note that the court did not address the issue of negligence in its oral decision. A finding of “negligence” is a predicate to the court’s imposition of a civil penalty of up to $1,500 which is then credited as an offset to any restitution for “unreimbursed medical expenses, lost earnings and other damages” resulting from a serious injury.
The Bard Court has determined that the concept of “negligent ownership of a domestic animal” does not exist under the New York common law. For the reasons stated in section 121’s legislative history, the New York lawmakers have decided to introduce negligence as an element to a civil penalty. Absent a statutory definition, the court concludes that the legislature intended “negligence” for the purpose of section 121 (7) to be the same standard that applies generally in New York State. Negligence is defined as a failure (by a person with a duty of care) to use that degree of care that a reasonably prudent person would have used under the same circumstances, and which gives rise to proximate injuries which are reasonably foreseeable. (See Restatement [Second] of Torts § 518 [b].)
The court notes that the petitioner has clearly and convincingly met his burden to establish a “dangerous dog” designation with evidence of an “unprovoked attack by a dog with apparent ability to inflict injury which would instill in a reasonable person an apprehension of harm.” (See Matter of LaBorie v Habes, 52 Misc 2d 768 [Just Ct, Webster 1967].) The record presented also establishes the dog’s vicious propensity and, quite possibly, the respondents’ negligence. However, the court feels compelled to abstain in resolving the issue of “negligence” inasmuch as the pro se petition filed in this matter did not plead same and otherwise asserts its prima facie elements as required by CPLR 402. Indeed, no request is even made in the *656 petition to impose relief in the form of a civil penalty. Accordingly, the issue of negligence is not properly joined for disposition. It would be constitutionally impermissible, as a violation of due process, for the court to make a determination upon which the opposing party had no notice and opportunity to rebut. (See Nelson v Adams USA, Inc., 529 US 460 [2000]; People v Autorino, 61 Misc 2d 217 [Crim Ct, Queens County 1969].)[2]
Strict Liability
The issue of strict liability and the court’s ability to enter judgment for the recovery of medical expenses is a different matter. “Strict liability” is a legal concept which imparts responsibility to compensate upon persons who cause injury, even in the absence of fault or negligence. It is liability without regard to the intent, or the exercise of due care. (1 Kreindler, Rodriguez, Beekman and Cook, New York Law of Torts § 5.1 [14 West’s NY Prac Series 2008].) The original English common law applied a basic version of strict liability which imputed liability simply to “ownership” and “injury,” without regard to “scienter.” (See Losee v Buchanan, 51 NY 476 [1873].) The concept of strict liability evolved under American jurisprudence whereby, the common law now imposes liability in dog cases only in conjunction with a finding of “prior knowledge of vicious propensity.” (See Claps v Animal Haven, Inc., 34 AD3d 715, 716 [2d Dept 2006], citing Bard v Jahnke, supra; Collier v Zambito, supra.)
Section 121 (12) expressly provides that it is a supplemental remedy to the “vicious propensity” cause of action and expressly provides that said cause of action still exists. As such, it is a remedial statute enacted to remedy the rigor of the common law, and must be fairly construed to carry out the policy it was enacted to promote. (See generally Chamberlain v Western Transp. Co., 44 NY 305 [1871].) Findings of vicious propensity or negligence are not stated to be required elements. It is logical to conclude that the legislature has reintroduced the original English common-law approach and decided that strict liability for medical costs arises solely out of a finding of “dangerous dog ownership” and “injury.” The subject petition amply pleads *657 both elements of dangerous dog ownership and injury and the parties had ample notice and an opportunity to contest same. The court determines both elements factually exist and is now statutorily compelled to impose strict liability for the petitioner’s medical expenses.
Entry of Judgment
The parties also contest this court’s authority to enter judgment under section 121 (10). The court is mindful of the fact that, traditionally, it has been the Supreme Court which entertained serious injury dog bite cases as the Suffolk County District Court’s civil jurisdiction limit is $15,000 for plaintiffs. However, as a legislatively-created court, its jurisdiction is determined by such statute or statutes, as the legislature deems appropriate to enact. In this instance, the legislature deemed it provident to go outside the Uniform District Court Act, and exclusively grant supplemental jurisdiction to any “municipal judge or justice” to adjudicate dangerous dog complaints. (See Agriculture and Markets Law § 121 [2].) Prior to 2004, the statute was limited to nonmonetary relief. It is clear from the legislative history that it desired to increase “judicial leeway” in dealing with the situation and the plain language of the statute introduced a mechanism for entering money judgments. This, when coupled with the fact that it chose to add these avenues of relief to a law administered only by municipal courts, gives rise to the conclusion that it was granting jurisdiction to enter judgments for medical expenses arising from dangerous dog attacks, in an unlimited amount.
The record does contain a reference to an approximate $8,700 medical expense incurred by the petitioner. However, subdivision (7) of the statute refers to “unreimbursed medical expenses” while subdivision (10) is silent on the issue. It is the court’s conclusion that the intent of the statute is to compensate for “unreimbursed” medical expenses, and that it is a continuing obligation.
Accordingly, the court authorizes the petitioner to submit judgment consistent with this decision and proof of unreimbursed medical expenses, upon 20 days’ notice, upon the respondents. The respondents may thereafter respond via opposing papers or demand a damages hearing.

. See dissenting opinion of Judge R.S. Smith in the Bard v Jahnke decision (6 NY3d at 599).

. As a practical matter, the formal pleading of negligence is necessary as it constitutes many elements and as there exists multiple affirmative defenses such as “assumption of the risk” and “contributory negligence,” which can be asserted in response to same. It is also interesting to note that ju^y trial issues arise when litigating a negligence claim.