Sinchun Hwang v Pan (2024 NY Slip Op 24326)

[*1]

Sinchun Hwang v Pan

2024 NY Slip Op 24326

Decided on December 31, 2024

Civil Court Of The City Of New York, New York County

Zellan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 31, 2024
Civil Court of the City of New York, New York County

Sinchun Hwang, Claimant(s)

against
Grace Pan, Defendant(s)

Index No. SC-000361-23/NY

Sung Hwang, of New York, NY, for claimant
Grace Pan, self-represented defendant

Jeffrey S. Zellan, J.

After trial, with both sides appearing, and upon reviewing post-trial submissions ordered by the Court, the Court finds in favor of defendant.
In this action arising from a dog bite, defendant does not dispute that defendant's dog attacked and bit Claimant. Claimant seeks damages for pain and suffering as well as for out-of-pocket medical expenses. 
New York is a well-known adherent of the doctrine often (if somewhat incorrectly) known as the 'first bite rule.' The Court of Appeals, tracing the doctrine's New York origins back to 1816, has noted that "the law of this state has been that the owner of a domestic animal who either knows or should have known of that animal's vicious propensities will be held liable for the harm the animal causes as a result of those propensities," and that "{o]nce such knowledge is established, an owner faces strict liability for the harm the animal causes as a result of those propensities." Collier v. Zambito, 1 NY3d 444, 446 and 448 (2004) (affirming summary judgment in favor of defendant dog owner). However, as held long ago, "[i]f damage be done by any domestic animal, kept for use or convenience, the owner is not liable to action on the ground of negligence, without proof that he knew that the animal was accustomed to do mischief," and a judgment in plaintiff's favor absent such proof "is clearly wrong." Vrooman v. Lawyer, 13 Johns. 339, 339 (1816). While the Court of Appeals explained further that "[t]his disposition does not entitle dog owners to an automatic 'one free bite,'" and that "[t]here could certainly be circumstances where, although a dog has not yet bitten a person, its vicious nature is apparent," the general rule first enunciated over 200 years ago in Vrooman still governs in New York. Collier, at 448. See also, Gerald Lebovits, et al., Small Claims Manual (6th ed. 2022), at 118 (discussing the rule and stating that "it does mean that the most straightforward category of claim (injuries suffered simply from having been bitten . . . ) may be pursued only on the traditional strict-liability/vicious propensity theory").
Based on the credible testimony and evidence adduced at trial, the Court finds that Claimant failed to meet their burden of proof as there was insufficient credible evidence or testimony supporting the requisite notice of vicious propensity as to create liability for defendant [*2]under this common law doctrine. Indeed, claimant virtually acknowledges as much in their post-trial submission. (Claimant's Written Summation, at 2).[FN1]
While this conclusion might put an end to the matter, it does not do so in this action as claimant asserts a second theory of liability that is statutory in nature.[FN2]

Claimant asserts that the Court may still grant relief, at least insofar as to the alleged medical expenses, pursuant to Agriculture and Markets Law § 123(10), which is part of New York's dangerous dog statute adopted as part of 2004 NY Laws ch 392. (Claimant's Written Summation, at 2-3). Under Agriculture and Markets Law § 123(10), "[t]he owner or lawful custodian of a dangerous dog shall . . . be strictly liable for medical costs resulting from injury caused by such dog to a person, companion animal, farm animal or domestic animal." 2004 NY Laws ch 392 § 3, codified in relevant part as Agriculture and Markets Law § 123(10). Chapter 392 was itself an effort to reform the definition of a "dangerous dog" and the judicial process to control a dangerous dog and render it safe to the community, which had been extensively overhauled in 1997 into largely what it is today. See, 1997 NY Laws ch 530.
Claimant asserts that "[u]nder the Dangerous Dog Statute, a victim only needs to prove that the dog attacked her and that she incurred medical expenses as a result," and that "[t]he statute does not require evidence of the dog's prior attacks or other dangerous propensities or the owner's or lawful custodian's prior knowledge thereof."(Claimant's Written Summation, at 2). Further, claimant asserts that "there is no prior dangerous dog adjudication requirement for this provision to apply." (Claimant's Written Summation, at 3). 
In support of their position, claimant principally relies upon a number of coordinate trial court decisions. In Budway v. McKee, the Supreme Court, Nassau County noted that Agriculture and Markets Law § 123(10), "does not require that a dog was previously found to be a 'dangerous dog' as a condition to holding the owner strictly liable for medical costs." Budway v. McKee, 27 Misc 3d 316, 320 (Sup. Ct., Nassau Co. 2010). In a similar vein, the District Court, Suffolk County simultaneously declared a dog dangerous and awarded judgment for medical expenses pursuant to Agriculture and Markets Law § 123(10). Christensen v. Lundsten, 21 Misc 3d 651, 656 (Dist. Ct., Suffolk Co. 2008). Citing Budway and Christensen, the Webster (Monroe County) Town Court granted judgment for dog bite-related medical expenses despite the lack of any vicious propensity evidence, based upon "the conclusion that the Legislature intentionally created a cause of action for medical costs resulting from an injury caused by a dog . . . and that liability for such costs may be established simply by showing an attack without justification, [*3]which is the definition of a dangerous dog." Wilcox v. Perkins, 30 Misc 3d 1216(A), *7 (Webster Town Ct. 2011). Wilcox is particularly relevant in that the claim was raised, like this action, before the small claims part of that court. See also, Medina v. Romanofsky, 2017 NY Slip Op 51320(U), *4 (Civ. Ct., Richmond Co. 2017) (finding that dog was a dangerous dog for purposes of Agriculture and Markets Law § 123 and awarding medical expense damages in a small claims action). While claimant's reliance on Budway, Christensen, and Wilcox (bolstered by the Court's discovery of Medina in the course of its research) to establish the Court's authority here may be tempting for efficiency and equity purposes, the Court must decline.
Contrary to claimant's assertion, a defendant is not strictly liable under the statute for medical expenses merely upon a finding that defendant's dog attacked the claimant and that the claimant incurred medical expenses as a result. The statute expressly provides that a Court must first find that the subject animal is a "dangerous dog." While Claimant may be correct that a finding of a "dangerous dog" under the statute warranting reimbursement of medical expenses might not be the same as a finding of vicious propensity under common law warranting an award of compensatory and other damages, the Court finds that the Small Claims part is not the appropriate forum for such a finding as contemplated by the statute. Further, even if (as the Court assumes without deciding for purposes of this decision) such a finding can be made in the same proceeding as a claim for medical expenses, such a finding is beyond the Small Claims Part's remit. Budway, at 320, citing, Town of Hempstead v. Lindsey, 25 Misc 3d 1235(A) (Dist. Ct., Nassau Co. 2009). Bill Jacket, 1997 NY Laws ch. 530, 18 (Mem. of Dept. of State analyzing bill and noting what is now Agriculture and Markets Law § 123 "requires a proceeding in municipal court to determine whether a seized dog is dangerous"). 
The current small claims process generally, with its limited available remedies under its jurisdiction, is insufficient to provide the type of proceeding and remedies contemplated by Agriculture and Markets Law § 123 and thus must be brought in a court that can provide for such proceedings and remedies. For instance, under Agriculture and Markets Law § 123(2), proceedings must be commenced upon a verified petition, which a reviewing court must then promptly review and make a probable cause determination upon whether there is probable cause to believe the subject dog is dangerous, and if such finding is made, to order the immediate seizure and detention of the subject dog by law enforcement pending trial. See, Agriculture and Markets Law § 123(2). Then, after a trial in which petitioner has a "clear and convincing evidence" burden, the Court, "[i]f satisfied that the dog is a dangerous dog . . . shall then order neutering or spaying of the dog, microchipping of the dog," and has discretion to order 1) behavioral evaluation at the owner's expense; 2) "secure, humane confinement of the dog for a period of time and in a manner deemed appropriate by the court;" 3) "restraint of the dog on a leash by an adult of at least twenty-one years of age whenever the dog is on public premises;" 4) "muzzling [of] the dog whenever it is on public premises;" and/or "maintenance of a liability insurance policy" of up to $100,000 to cover injuries caused by the dog. Agriculture and Markets Law § 123(2). Upon a finding of aggravating factors, the trial court can order permanent (i.e., lifetime) confinement or euthanasia of the subject dog. See, Agriculture and Markets Law § 123(3). Spaying/neutering and microchipping are nondiscretionary upon a dangerousness finding, and a core aspect of the 1997 reform. Bill Jacket, 1997 NY Laws ch. 530, 14 (Ltr. by Amer. Socy. for Prevention of Cruelty to Animals describing mandatory spaying/neutering as "absolutely essential"). 
There is no indication in the bill jackets of either the 1997 bill creating the present [*4]dangerous dog framework or the 2004 bill establishing medical expense liability that the Legislature intended for small claims courts to be 1) making probable cause findings on dangerousness; 2) issuing what are effectively no-bail arrest warrants for dogs; 3) conducting pseudo-criminal trials resulting in declaratory findings; and 4) ordering mandatory surgeries (including forcible castration) upon any living creature great or small; let alone 5) issuing canine equivalents of life sentences (with or without the possibly of parole) or the death penalty. None of that is consistent with the "procedurally streamlined, less-formal means of fairly, rapidly, and inexpensively adjudicating small-dollar cases" that the Small Claims Part is designed to do, in keeping with the distinctive character of New York small claims practice.[FN3]
Small Claims Manual, at 1 and 5. Without legislative guidance to the contrary, the Court finds that the statutory scheme contemplated in the AML is beyond the jurisdiction of the Small Claims Part of the New York City Civil Court.
In addition to the aforementioned obstacles arising from the procedures required under the AML, the Court also concludes that the Court lacks jurisdiction to make the underlying requisite finding that the subject animal is a "dangerous dog" as such a finding would be, essentially, a declaratory judgment, the jurisdiction for which the Small Claims part does not have.[FN4]
In this regard, the Court concludes that a finding by the Court that the subject animal is a "dangerous dog," given the nature of the process contemplated by the statute, would be akin to the type of declaratory judgment that would be required for the court to pierce the corporate veil and allow for individual liability of a corporate officer, which the appellate courts have made clear is beyond the scope of small claims jurisdiction. See, Small Claims Manual, at 13 (noting that the Appellate Divisions of the First and Second Departments have held "that when granting relief on a claimant's monetary claim would require the court first to afford the claimant a remedy sounding in equity (such as piercing the corporate veil or determining that the claimant is a trust beneficiary)" the Court lacks jurisdiction) (citations omitted).
To the extent claimant wishes to pursue relief pursuant to Agriculture and Markets Law § 123, the Court lacks jurisdiction to hear that claim and dismisses it without prejudice.[FN5]
Where Wilcox or Medina can be read to the contrary, they are not binding, and the Court respectfully [*5]declines to follow them. See, e.g., Pena v. Rivera, Index No. SC-1110-22/BX, 2023 NY Misc. LEXSI 9513, *3 (Civ. Ct., Bronx Co. Oct. 12, 2023) (discussing unpersuasive coordinate decisions and declining to follow then).
Accordingly, it is
ORDERED that the clerk enter judgment in favor of defendant dismissing claimant's cause of action for common law negligence; and it is further
ORDERED that the clerk dismiss claimant's cause of action seeking relief pursuant to Agriculture and Markets Law § 123 without prejudice due to lack of subject matter jurisdiction.
This constitutes the Decision and Order of the Court.
Date: December 31, 2024
Hon. Jeffrey S. Zellan, J.C.C.

Footnotes

Footnote 1:See also, Scavetta v. Weshcler, 149 AD3d 202, 203 and 212 (1st Dept. 2017) (noting policy debates regarding current precedent but finding that the court was bound by the Court of Appeals); and Luongo v. Records Access Officer, 150 AD3d 13, 26 (1st Dept. 2017), 26 (petitioner's "remedies, under our tripartite system of government, rest with the legislature as the policy-making branch of government," or the Court of Appeals no matter their potential policy merit).

Footnote 2:Notably, the Agriculture and Markets Law expressly acknowledges that the common law claims related to dog bites and their potential remedies exist in addition to and separate and apart from the statutory scheme contemplated in the Agriculture and Markets Law. See, Agriculture and Markets Law § 123(12).

Footnote 3:To be sure, the Small Claims Part has advanced in many ways from its humble origins of "more modest cases," and "damaged trousers," in 1934. Small Claims Manual, at 147. But, its core purpose and societal role remain unchanged.

Footnote 4:The Court expressly does not opine on whether the General Civil Part of the Court has jurisdiction to declare a dog dangerous but does find that, in any event, the Small Claims Part does not. Because this is a question of jurisdiction rather than complexity, the correct remedy is dismissal rather than simply transfer to the General Civil Part. See, e.g., In House Grp. v. Maleque, Index No. CC-60040-23/NY, 2024 NY Misc, LEXIS 2329 (Civ. Ct., New York Co. Mar. 25, 2024) (dismissing small claim for lack of small claims subject matter jurisdiction).

Footnote 5:Because this is a question of jurisdiction in addition to complexity, the correct remedy is dismissal rather than simply transfer to the General Civil Part. See, e.g., In House Grp. v. Maleque, Index No. CC-60040-23/NY, 2024 NY Misc, LEXIS 2329 (Civ. Ct., New York Co. Mar. 25, 2024) (dismissing small claim for lack of small claims subject matter jurisdiction).